**YORK PRODUCTS, INC.,**
Plaintiff–Appellant,

v.

**CENTRAL TRACTOR FARM & FAMILY CENTER and Custom Form Manufacturing, Inc., Defendants–Appellees.**

No. 96–1002.

United States Court of Appeals,
Federal Circuit.

Nov. 1, 1996.

Raymond G. Hasley, Rose, Schmidt, Hasley & DiSalle, P.C., Pittsburgh, PA, argued, for plaintiff-appellant. With him on the brief was Brian W. Ashbaugh.

David R. Melton, Barnes & Thornburg, South Bend, IN, argued, for defendants-appellees. With him on the brief was Paul B. Hunt.

Before RADER, Circuit Judge, SKELTON, Senior Circuit Judge, and BRYSON, Circuit Judge.

RADER, Circuit Judge.

The United States District Court for the Western District of Pennsylvania granted a motion for judgment as a matter of law (JMOL) in favor of Central Tractor Farm & Family Center (Central Tractor) and Custom Form Manufacturing, Inc. (Custom Form). York Products, Inc. (York) appeals. Because the claim language dictates the trial court's interpretation, this court affirms its interpretation of claim 1. Because claim 32 differs from claim 1, however, this court reverses the trial court's interpretation of claim 32 and the term "plurality." Accordingly, this result requires a remand for findings on infringement.

## I.

York owns U.S. Patent No. 4,958,876 (the '876 patent) entitled "Vehicle Cargo Bed Liner." The patent claims a protective liner for a vehicle cargo body, such as the bed of a pickup truck. This liner fits inside the cargo bed of a vehicle and prevents damage from a shifting load. The sidewalls of the claimed liner include protective ridges. These ridges align on opposite sides of the liner to create slots into which a user may insert a wooden board to lock a load into place. As disclosed in the patent, this load lock feature prevents cargo from shifting during transit. Figures 2 and 7 from the '876 patent illustrate this load lock feature:

FIG. 2

FIG.7

Central Tractor allegedly infringed the '876 patent by selling bed liner products. Custom Form manufactured the accused products. In the litigation, Custom Form defended Central Tractor.

York alleges that Custom Form infringed claims 1–8, 15, 16, 19–25, 30–33, 35, and 36 of the '876 patent. Custom Form manufactures two models of bed liners for use in the cargo body of pickup trucks: an under-the-rail type

and an over-the-rail type. The rail is a structure at the top of the wall of a pickup truck cargo bed. The upper edge of the liner sidewalls either fits under the rail or extend over the top of the rail. Custom Form's under-the-rail model has two distinct means to separate and restrain cargo; its over-the-rail model has only one. York alleges each type of bed liner infringes claims of the '876 patent.

Before trial, the parties requested that the trial court issue jury instructions on claim interpretation. Both parties submitted proposed interpretations. The trial court denied this request. Instead, the trial court elected to select a jury and proceed with the trial. When York had closed its case for infringement, Custom Form moved for JMOL under Fed.R.Civ.P. 50(a). The trial court denied the motion. Custom Form thus began its case-in-chief.

After the trial had been underway about a week, the trial court distributed draft jury instructions which interpreted the claims. These draft instructions adopted many of the proposed interpretations Custom Form had submitted before trial. York moved to present oral argument on those instructions. The trial court granted the motion and sequestered the jury. After oral argument, the trial court declined to modify its draft instructions. York entered a formal objection to the proposed form of the jury instructions. Based on its perception that the court's proposed jury instructions precluded a finding of infringement, York also requested that the trial court reconsider and grant Custom Form's earlier JMOL motion. The district court accordingly granted Custom Form's renewed motion for JMOL. York appeals.

## II.

This court gives a grant of JMOL under Rule 50(a) plenary review on appeal. *Allied Colloids, Inc. v. American Cyanamid Co.,* 64 F.3d 1570, 1573 (Fed.Cir.1995). As an initial matter, this case asks whether York, because it requested Custom Form to renew its JMOL motion, waived its opportunity to challenge the JMOL on appeal. A party that does not timely object to errors or does not raise issues at trial risks waiver of appeal rights. *See* Charles Alan Wright & Arthur R. Miller, 9A *Federal Practice &*

*Procedure* §§ 2472 & 2533 n. 16 (2d ed. 1995) (failure to object to the lack of grounds in the trial court may prohibit raising point in the appellate court). York, however, does not fit this profile. York explicitly objected to the trial court's claim interpretation on numerous grounds. Instead, after reserving its objections and clearly presenting the issues to the trial court, York consented to entry of JMOL to expedite its appeal and to conserve both its client's and the court's resources. Because it expressly raised and reserved objections on the claim interpretation issues on appeal, York has not waived its rights. To the contrary, York has proceeded responsibly to avoid needless expenditure of the resources of the parties and the court.

This court's sister circuit undertook a similar action in *Deas v. PACCAR, Inc.,* 775 F.2d 1498 (11th Cir.1985). In that case, after a full trial, the jury found for Deas. In response, Paccar moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied Paccar's motion for JNOV but granted the motion for a new trial. Because the grant of a new trial is an interlocutory order, Deas then requested that Paccar's JNOV motion be granted in order to allow an immediate appeal. The Eleventh Circuit found support for reviewing the motion, even though Deas had consented to the court's order. " 'The plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay.' " *Id.* at 1503 (quoting *Thomsen v. Cayser,* 243 U.S. 66, 83, 37 S.Ct. 353, 358, 61 L.Ed. 597 (1917)); *see also National Polymer Products, Inc. v. Borg–Warner Corp.,* 660 F.2d 171, 177 (6th Cir.1981) (allowing parties to consent to JNOV in order to obtain immediate review). In *Deas,* however, the court noted that while an appellant may "consent to the grant of JNOV as a vehicle" to reach appeal, the court would only review the trial court's ruling initially adverse to Deas, i.e., the grant of Paccar's motion for a new trial. 775 F.2d at 1503. The court proceeded to review for clear error the trial court's granting of the motion for a new trial. *Id.* This

review stands in contrast to the *de novo* review to which a motion for JNOV is normally subjected. In this case, we review the district court's action under the standard of review dictated by the Supreme Court in *Markman*. *Markman v. Westview Instruments, Inc.*, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

### III.

Because the parties dispute the meaning of terms in the claims of the patent, this court reviews the district court's order under the requirements of *Markman*. *Id.* The claim language, of course, defines the bounds of claim scope. *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619–20, 34 USPQ2d 1816, 1819 (Fed.Cir.1995) ("First, and most importantly, the language of the claim defines the scope of the protected invention."). To determine the meaning of disputed claim terms, however, a construing court may consider other sources, including the patent specification and the administrative record leading to patent issuance. *Whittaker Corp. v. UNR Indus., Inc.*, 911 F.2d 709, 711, 15 USPQ2d 1742, 1744 (Fed.Cir.1990). These additional sources may provide context and clarification about the meaning of claim terms.

Claim 1 states as follows:

A protective liner for a vehicle cargo bed, said protective liner permitting structure positioned in the vehicle cargo bed to be supported and affixed in position in the cargo bed, said liner comprising:

> a liner floor portion positionable upon the floor of the vehicle cargo bed, said liner floor portion having elevated portions formed thereupon to conform to wheel wells protruding from the vehicle cargo bed floor;

> liner sidewall portions extending upwardly from opposite sides of the liner floor portion, one of each of said liner sidewall portions being positionable against one of a pair of opposite sidewalls of the vehicle cargo bed;

> a liner frontwall portion extending upwardly from a front end of the liner floor portion, said liner frontwall portion being positionable against a frontwall of the vehicle cargo bed; and

> a plurality of spaced apart, vertically extend[ing] *ridge members protruding in a common plan[e] from the liner sidewall portions for at least a substantial[ ] part of the entire height thereof* whereby gaps separating adjacent ones of the ridge members of each liner sidewall portion form cooperative opposed load locks of a depth sufficient to receive opposite ends of the structure positioned in the vehicle cargo bed in order to affix the structure against movement in a direction parallel to said liner sidewall portion in the vehicle cargo bed.

(Emphasis added.)

In its claim interpretation, the district court defined the limitation "at least a substantial part of the entire height thereof" to mean "the ridge member must protrude from each of the sidewalls of the bed liner and must extend from near the bottom to near the top of the liner sidewall." In addition, the district court stated:

> "Substantially the entire height thereof" simply means that the ridges must cover nearly the entire length of the sidewall. This limitation in the Claim was added by the patent applicant during prosecution of the patent, as was the case for the words: "vertically extending." A projection in the sidewall that does not span nearly the entire distance from the top to the bottom of the sidewall does not meet this limitation.

The claim language itself shows the accuracy of the district court's interpretation. Without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning. *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951, 28 USPQ2d 1936, 1938 (Fed.Cir.1993); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 882, 8 USPQ2d 1468, 1471 (Fed.Cir.1988); *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1579, 6 USPQ2d 1557, 1560 (Fed.Cir.1988). In this case, the patent discloses no novel uses of claim words. Ordinarily, therefore, "substantially" means "considerable in ... ex-

tent," *American Heritage Dictionary Second College Edition* 1213 (2d ed. 1982), or "largely but not wholly that which is specified," *Webster's Ninth New Collegiate Dictionary* 1176 (9th ed. 1983). Thus, the modifier "substantially" conveys that the ridge members extend over most of the "entire height" of the sidewall portions. The district court's language captured well this meaning: "[T]he ridge member ... must extend from near the bottom to near the top of the liner sidewall."

"Substantial" in this context does not mean ample extension to accomplish the purpose of locking loads. The language "substantial part" expressly modifies the term "entire height." "Entire height," in turn, refers (via the antecedent marker "thereof") to "liner sidewall portions." Therefore, the claim language explicitly ties "substantial part" to the height of the sidewalls, not to the overall function of the invention. The language and syntax of the claim preclude a functional definition of "substantial part." In other words, if "substantial part" meant only ample height to accomplish a purpose, the claim would need to read "only so much height as necessary to affix a structure against movement." This redraft would essentially strip many words in the claim of their meaning.

The claim term "portions" also does not limit the "entire height" limitation to something less that the full height of the sidewalls. The context of the claim shows that the inventor used the term "liner sidewall portions" to distinguish the sidewalls from other portions of the overall invention such as the "liner floor portion" or "the liner frontwall portion." In context, the word "portion" does not refer to a part of the liner sidewall, but to the sidewall itself as a portion of the entire bed liner.

■ The specification also supports the district court's reading of this claim language. The embodiments disclosed in the '876 patent and its drawings show ridge members extending nearly the entire height of the sidewall. At no point does the specification suggest that "at least a substantial part of the entire height [of the sidewall]" means less than the entire height of the sidewall. Moreover, the specification uniformly uses the term "portion" to distinguish features of the invention from each other, not to refer to less than the entire feature. Even the reference at column 4, line 52, ("Sidewall *portions* 20 and 22 further contain rail overlay *portions* 27 containing notched parts 27A.") (emphasis added), identifies a feature, rather than limiting the feature's reach. Although the scope of the claims is not necessarily limited to the specific embodiments described in the specification, *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1559, 38 USPQ2d 1471, 1474 (Fed.Cir.1996), the specification of the '876 patent does not provide any indication that the claim terms should be given anything other than their ordinary meaning. *See North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1576, 28 USPQ2d 1333, 1337 (Fed.Cir.1993).

In sum, the district court correctly construed the phrase "a substantial part of the entire height thereof." The limitation requires that the ridges must cover nearly the entire height of the sidewall portion of the invention.

## IV.

■ Unlike claim 1, however, claim 32 does not explicitly limit the height of the ridge members forming the load locks in the sidewalls. Instead, claim 32 describes the load lock in terms of depth:

> 32. A protective liner for a cargo bed of a vehicle, said protective liner allowing a structure positioned in the trunk cargo bed to be supported and affixed in position in the vehicle cargo bed, including:
>
>> a liner floor portion having elevated portions formed thereupon to conform to wheel wells protruding from the cargo bed floor;
>>
>> upwardly extending liner sidewall portions extending upwardly from opposite sides of the liner floor portion an upwardly extending liner frontwall portion extending upwardly from a front end of the liner floor portion; and
>>
>> *means formed on the upwardly extending liner sidewall portions including a plurality of spaced apart vertically extending ridge members protruding from*

*the liner sidewall portions and forming load locks* in gaps separating adjacent ones of the ridge members, *said load locks having a depth sufficient to anchor a structure positioned and supported in the cargo bed.*

(Emphasis added). Despite the differences between claim 1 and claim 32, the district court interpreted claim 32· to require "the ridge member . . . [to] extend from near the bottom of the sidewall to near the top of the sidewall."

■ Claim 32 uses language that may implicate the procedures for construing a means-plus-function claim. In determining whether to apply the statutory procedures of section 112, ¶ 6, the use of the word "means" triggers a presumption that the inventor used this term advisedly to invoke the statutory mandates for means-plus-function clauses. 35 U.S.C. § 112, ¶ 6 (1994); *see Greenberg v. Ethicon Endo–Surgery, Inc.,* 91 F.3d 1580, 1584, 39 USPQ2d 1783, 1787 (Fed.Cir. 1996). Nonetheless, mere incantation of the word "means" in a clause reciting predominantly structure cannot evoke section 112, ¶ 6. *See, e.g., AMP Inc. v. Fujitsu Microelectronics Inc.,* 853 F.Supp. 808, 820–21, 31 USPQ2d 1705, 1712 (M.D.Pa.1994) (despite use of the term "means," claims were not means-plus-function); *Waterloo Furniture Components, Ltd. v. Haworth, Inc.,* 798 F.Supp. 489, 494, 25 USPQ2d 1138, 1142 (N.D.Ill.1992) (holding "that the ·use of the word 'means' in a claim does not as a matter of law refer to an element expressed in means-plus-function form"). Conversely, "[t]he recitation of some structure in a means plus function element does not preclude the applicability of section 112(6)." *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1536, 19 USPQ2d 1367, 1369 (Fed.Cir.1991).

While the last paragraph of claim 32 begins with the word "means," what follows is a detailed recitation of structure. The clause begins with a description of "means formed on the . . . sidewall portions including . . . ridge members." This language describes generally, indeed expressly includes, ridge members that serve as anchors for load locks. The clause then refers to "forming load locks," followed by still more structural

language about gaps between ridge members and the depth of the load locks ("load locks having a depth sufficient to anchor a structure positioned and supported in the cargo bed").

■ The claim language, however, does not link the term "means" to a function. In language again suggestive of structure, the claim notes that the "means" "protrud[e] from the liner sidewall portions and form[] load locks." This language vaguely hints at the function of anchoring a load in the cargo bed. Nowhere does the claim language following "means" state that function. Instead, the claim recites structure. Without an identified function, the term "means" in this claim cannot invoke 35 U.S.C. § 112, ¶ 6. Without a "means" sufficiently connected to a recited function, the presumption in use of the word "means" does not operate. In any case, the express structural limits of the claim language limit its scope. Thus, this court construes this claim without reference to section 112, ¶ 6.

Neither the language of claim 32, nor the specification, requires that the ridges extend over the entire height of the sidewalls. The claim language does not include a height limitation. Instead of referring to height, the claim discloses "load locks having sufficient depth." The specification supports this construction. For example, the specification calls for "gaps separating adjacent ones of the ridge members [to] form load locks of a depth sufficient to anchor an end of the structure." In other words, for this claim, the necessary height of the ridge members depends on the height of the structure to be anchored.

Figure 2 illustrates the height of ridge members necessary to form a load lock. Figure 2 designates a plurality of ridge members above the level of the wheel well as 28A. Similarly, Figure 2 designates the ridge members below the level of the wheel well as 28B. A support member which need not rise above the level of the wheel well might be fully anchored by and between only the 28B ridge members. In other words, a load lock may be formed using only ridge members 28B, which do not extend the entire height of the sidewall. In sum, claim 32 contains no

limitation analogous to the "substantially" language in claim 1. No limitation in the claim or the specification requires that the ridge members extend any distance beyond that sufficient to form a load lock.

■ The prosecution history also does not require a height limitation in claim 32. In a literal infringement analysis, prosecution history is relevant to claim coverage. *See, e.g., Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83, 39 USPQ2d 1573, 1577 (Fed.Cir.1996) ("[T]he record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims."); *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 7 USPQ2d 1129 (Fed.Cir.1988). Unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage. *See Senmed, Inc. v. Richard–Allan Med. Indus., Inc.*, 888 F.2d 815, 820, 12 USPQ2d 1508, 1513 (Fed.Cir. 1989) (reversing jury's claim interpretation that is "incontestably inconsistent with the position taken ... during prosecution").

In this case, the inventor's conduct during the administrative process for acquiring a patent did not evince a clear disavowal of claim scope. The art prior to the '876 patent, specifically Rye, U.S. Patent No. 4,767,149, shows a support surface in a truck bed liner that reaches about two-thirds the height of the sidewall. Although the examiner at first rejected one claim based on Rye, the inventors eventually swore behind that reference to remove it as prior art. Moreover, the file history does not contain a single statement that the inventors conceded any coverage based on Rye. In sum, the administrative record discloses no disavowal of coverage, unmistakable or otherwise, due to Rye. Therefore, the prosecution history does not supply any reason to construe claim 32 to contain a height limitation.

In sum, the language of claim 32, unlike claim 1, contains no height limitation referenced to the height of the sidewall. Instead, claim 32 keys the load lock to the depth "sufficient to anchor the structure." Therefore, the district court erred by reading the height limitation from claim 1 into claim 32.

## V.

■ The district court also interpreted the term "plurality" in the claims. Although not part of the jury instructions, the trial court issued an order, dated September 22, 1995, construing this term:

> As a matter of claim construction, the court defines *"plurality"* as meaning more than three "gaps" or "pockets" on each of the two sidewalls. The "gaps" or "pockets" are positioned on each sidewall in such a manner so as to allow the first end of a structure to be anchored in a "gap" or "pocket" on one sidewall, and a second end of a structure to be anchored in a "gap" or "pocket" on the opposing sidewall.

(Emphasis in original.)

The district court did not provide reasoning for its conclusion that "plurality" means more than three "gaps" or "pockets" on each sidewall. Moreover, this court detects no support for this conclusion in the plain meaning of the word or any of the public documents, including the patent and the administrative record of its procurement. The term means, simply, "the state of being plural." *American Heritage Dictionary Second College Edition* 955 (2d ed. 1982). Thus, this term requires only at least two ridge members on each sidewall to form a load lock.

There is nothing in the file history that would alter this plain meaning. Rye, which may not qualify as prior art, discloses a bed liner with three recesses. Rye, however, does not disclose sidewall ridges. Instead, Rye secures a load with its recesses. In any event, the '876 patent differs from Rye in many more respects than simply having more than three "gaps" or "pockets." Furthermore, the administrative record does not disclose that the '876 inventors took any steps to distinguish the Rye reference other than to swear behind it. In sum, the mere invocation of Rye does not support the conclusion that "plurality" must mean more than three "gaps" or "pockets" to escape prior art.

Without reason to construe "plurality" other than in accordance with its ordinary meaning, this court notes that the district court

erred by unduly limiting the meaning of "plurality."

### VI.

Based on its claim interpretation, the district court granted Custom Form's motion for a judgment of noninfringement. As noted in this opinion, however, the trial court erred in certain points of its interpretation with respect to claim 32. At this juncture, this court lacks sufficient findings of fact from the district court upon which to enter JMOL. Therefore, this court remands for revised findings on infringement in light of the proper claim construction.

### COSTS

Each party shall bear its own costs.

*AFFIRMED IN PART, REVERSED and REMANDED IN PART.*