C.L.I.C. ELECTRONICS INTERNATIONAL, INC., Plaintiff,

v.

CASIO, INC., Defendant.

CASIO, INC., Plaintiff,

v.

C.L.I.C. ELECTRONICS INTERNATIONAL, INC., Defendant.

Nos. 96–929–Civ–Orl–3ABF(22), 97–234–Civ–Orl–3ABF(18).

United States District Court, M.D. Florida, Orlando Division.

Sept. 4, 1997.

---

James H. Beusse, Hobby & Beusse, P.A., Winter Park, FL, Lee F. Grossman, Mark M. Grossman, Grossman & Grossman, Ltd., Chicago, IL, for C.L.I.C. Electronics Intern., Inc.

Daniel C. Johnson, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, FL, Barry D. Rein, Scott D. Stimpson, Kenneth L. Stein, Pennie & Edmonds, New York City, for Casio, Inc.

## MEMORANDUM OPINION AND ORDER [1]

BAKER, United States Magistrate Judge. *

This matter comes before the Court on Defendant Casio's Motion for Summary Judgment (Doc. No. 39) based on non-infringement of Plaintiff's patent. The motion has been briefed with oral argument. For the reasons set forth below, the motion is **DENIED.**

1. This opinion is being released simultaneously in paper and electronic formats. One electronic version is a WordPerfect ™ 8 document and includes internal hyperlinks and links to sites on the World Wide Web. Viewing the external links requires access to the Internet including browser software. As with any links to the Internet, these links may change or be unavailable in the future. For this and other archival reasons, the original signed version is the only official one. The electronic version is provided to give additional depth to some of the references in the opinion and as a prototype for future electronic opinions. A copy is being sent to counsel by floppy disk, and the opinion will also be posted in HTML format on the Internet as well as the Judiciary's internal Data Communications Network.

## BACKGROUND

In this patent action, Plaintiff C.L.I.C. Electronics International, Inc. (C.L.I.C.) seeks recovery from Defendant *Casio, Inc.* for alleged infringement of C.L.I.C.'s patent of certain digital electronic technology. Casio has raised numerous defenses, but the only issue ripe for decision is whether Casio has established non-infringement under the Rule 56, F.R.Civ.P., standards for summary judgment.

C.L.I.C.'s patent [2] is for a "remote display device for a microcomputer with optical communication." The *abstract* and *claims in suit* of the patent are set forth in the appendix to this opinion. The gist of the invention is the remote display of data from a calculator to a detached receiving unit.

Casio's allegedly infringing devices [3] are characterized by Casio as electronic toys, consisting of hand held keyboards with displays and infrared transmission capability. The Casio units are capable of receiving and displaying entries generated on corresponding remote units. For present purposes, Casio contends that its devices do not embody all of the properly interpreted elements of the claimed invention, so that it is entitled to summary judgment of non-infringement.

## SUMMARY JUDGMENT STANDARD

The standard for considering motions for summary judgment is well established in patent as in other cases.

A trial court may award summary judgment only when the parties present no genuine issue of material fact and the mov-

* The parties consented to the jurisdiction of the Magistrate Judge for all proceedings in this case. *See* 28 U.S.C. § 636(c).

2. The patent in suit is *Re. 33,229 ("the '229 Patent")* dated June 5, 1990. It is a reissue of *patent no. 4,763,291* which was issued August 9, 1988. A *copy of the patent* can be viewed on the World Wide Web courtesy of the IBM patent server.

3. Casio refers to these products as "Magic Diaries." The *"Magic Diary"* listing on the Casio World Wide Web site reports that there are *no products* meeting this description.

ing party deserves judgment as a matter of law. Fed.R.Civ.P. 56(c); see *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1310–11, 7 USPQ2d 1881, 1883–84 (Fed. Cir.1988). In assessing the motion, the court must resolve all inferences in favor of the non-movant. See *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 850, 23 USPQ2d 1471, 1472 (Fed. Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

*Abtox, Inc. v. Exitron Corporation*, 122 F.3d 1019 (Fed.Cir.(Mass.1997)).

■ In patent cases, this method of analysis includes aspects not found in other civil cases.

The test for patent infringement requires both proper interpretation of the claim scope and proper comparison of the claims with the accused device. See *Becton Dickinson & Co. v. C.R. Bard Inc.*, 922 F.2d 792, 796, 17 USPQ2d 1097, 1099 (Fed.Cir. 1990).

*Id.* This process has certain artificial aspects. Claim interpretation is to some extent an exercise in wordplay based on the carefully crafted but stilted language of the patent. From this strained verbal description of often abstract ideas and processes, a comparison must be made to items from the material world. The worldly objects are also subjected to verbalization (often tortured) of their characteristics. If this artificial comparison is sufficiently close in words and concepts, the case for infringement goes forward; if not, the defendant is entitled to judgment as a matter of law.

■ Claim interpretation is a matter for the court to determine. *Markman v. Westview Instruments, Inc.*, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This does not necessarily make claim interpretation more susceptible to a summary judgment than other disputed issues in a case. The absence of jury participation in this part of the appropriate disposition of a patent case does not mean that claim interpretation is always a matter of law or that genuine disputes of material fact should be decided on paper submissions without benefit of a trial.

Claim interpretation is the process of giving proper meaning to the claim language. Claim language, after all, defines claim scope. See *York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572, 40 USPQ2d 1619, 1622 (Fed. Cir.1996); *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619–20, 34 USPQ2d 1816, 1819 (Fed.Cir.1995) ("[T]he language of the claim defines the scope of the protected invention."). Therefore, the language of the claim frames and ultimately resolves all issues of claim interpretation. In determining the meaning of disputed claim terms, however, a construing court considers the descriptions in the rest of the patent specification, the prosecution history, and relevant extrinsic evidence. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed. Cir.1995) (en banc), aff'd, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996); *Whittaker Corp. v. UNR Indus.*, 911 F.2d 709, 711, 15 USPQ2d 1742, 1744 (Fed.Cir.1990). These additional sources provide a context to illuminate the meaning of claim terms. See *York Prods.*, 99 F.3d at 1572. Nonetheless, throughout the interpretation process, the focus remains on the meaning of claim language.

*Abtox, supra.*

## ANALYSIS

It is undisputed that Casio's units constitute, in the words of the patent abstract, an "optically linked calculator system for displaying data generated by a local calculator at both the local calculator and at a detached display." The evident characteristics of the units likewise generally track the remainder of the description from the abstract.

■ Casio's principal contentions are that its units do not have "command functions" and do not generate "results" as described in Claims 5 and 9 of the '229 patent, at least not when they are set for transmitting or receiv-

ing.[4] In so arguing, Casio has provided a cursory description of the functioning of its units and a contentious gloss on the language of the Claims. C.L.I.C. filed operating exemplars of the Casio units, and their complicated and versatile features are readily observable, even if their operating procedures are less than obvious. This record does not provide a satisfactory or complete understanding of the multiple functions and capabilities of Casio's units.

The language of the claims could be construed in splendid isolation. However, since the essence of an infringement case is comparison of the claims to the accused device, such a sterile interpretation would be neither illuminating nor helpful. The Court is most reluctant to reach a definitive understanding of the words and concepts of the patent claims on such a record.

This reluctance is fortified by the nature of Casio's arguments. In urging acceptance of its interpretation of the patent claims, Casio has added words and requirements of its creation, rather than adhering to the text of the claims and concepts associated therewith. For example, in arguing that "results" means something more than the conversion of key depressions into binary and visual display symbols, Casio introduces the concept of "calculated results." Calculations may be one aspect of the "functions" of calculators and other electronic devices. But functions can include characteristics and performance criteria other than mathematical calculations. This patent should not necessarily be read as though it were part of a high school algebra curriculum.

Casio's introduction of the word "calculated" in relation to "results" may be a material change in the scope of the invention, or it may be a helpful explanation of what is really contemplated as a patentable improvement on the prior art. Upon a full record, it may well be that the most reasonable interpretation of the claims should include the require-

ments urged by Casio. However, it would be improper to engraft new concepts or verbal formulation on the claims in the summary judgment context.

■ Casio's arguments regarding the doctrine of equivalents are similarly misplaced in this context. The degree and significance of any difference between the claim elements and the Casio products should be considered by the jury[5] in a record that reflects the overall development of the relevant art.

Casio's comparison of its products with the specification and preferred embodiment described in other parts of the patent does not add to its legal assault on the issue of infringement. Discrepancies between the specification and an allegedly infringing device may be instructive on the meaning to be given the claims, but they are unlikely to provide a basis for summary judgment and do not do so here. *See, e.g., SRI International v. Matsushita Electric Corporation of America,* 775 F.2d 1107 (Fed.Cir.1985) (*en banc*).

It may also be that, if C.L.I.C.'s inclusive interpretation is accepted, the validity of its patent will be subject to greater challenge. The present motion, however, does not involve questions of invalidity.

### CONCLUSION

Casio has argued with force and some vehemence that its "toys" ought not be considered infringements of C.L.I.C.'s patent on infrared transmitting electronic devices. Casio may well prevail on interpretation or any number of other grounds. It has not, however, presented a basis for judgment as a matter of law within the dictates of Rule 56. Genuine issues exist as to the proper interpretation of the words and concepts of the claim language as well as the operation of the allegedly infringing devices. The motion for summary judgment is **DENIED.**

---

4. Casio also raises an issue regarding the selectivity of what appears on the remote display. It is not at all obvious that the choices provided by the accused devices differ from the ordinary meaning of the language of Claim 5 in this regard.

5. Application of the doctrine of equivalents, unlike claim interpretation, is a jury issue. *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. ——, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

# APPENDIX

**Patent Re. 33,229**

## ABSTRACT

A [*sic*] optically linked calculator system for displaying data generated by a local calculator at both the local' calculator and at a detached display. The calculator system includes a plurality of transmitting calculators and receiving units. The receiving units include remote display receiving units and receiving calculators. Transmitting calculators transmit entered data and calculated results. Receiving units receive and display transmitted data entries and calculated results. A calculator includes a keyboard, keyboard logic, processing logic, display, display logic, transmit logic, infrared transmitter, switching means, infrared receiver receiver [*sic*] logic and converting logic. The switching means selectively enables components of the calculator for effecting a transmit mode, receive mode, and calculate mode. The remote receiver display unit includes an infrared receiver, data detection logic, processing logic, and a display.

1348

**Patent Re. 33,229**

# CLAIMS IN SUIT

5. An optically linked data processing system comprising:

first processing unit having a keyboard for manually entering data and command functions into said first processing unit[,] means responsive to data and command functions entered into said processing unit for operating thereon to generate corresponding results in a digital data format, said processing unit including display means coupled thereto for displaying said data and command functions and said results in a human readable form, said first processing unit further including optical means for converting said digital data formatted results into atmospherically transmitted pulses of optical radiation with a predetermined optical frequency range;

at least one detached remote data processing unit having an associated keyboard for manually entering local data and command functions, a local processing means for receiving local data and command functions and for operating thereon to generate corresponding local results, a local display means coupled to said local processing means, said at least one remote data processing unit further including optical means for atmospherically transmitting pulses of optical radiation within the predetermined optical frequency range, said optical means converting received pulses into digitally formatted data and command functions for application to said local processing means, said local processing means causing said data and command functions to be displayed on said local display means;

said first data processing unit and each of said at least one detached remote data processing unit including means for operating its respective optical means in both a transmit and a receive mode for permitting atmospheric optical signal transmission between said detached remote data processing unit and said first data processing unit; and

means in each said data processing unit and said detached remote processing unit for selectively displaying data and command functions from its associated keyboard and from optically received pulses from the other of said first data processing unit and said at least one detached remote data processing unit.

9.  In an interactive data processing system comprising at least a first and a second microcomputer, each of said microcomputers having a data and a function command processing means, a keyboard for entering data and function commands into said processing means, and a display means coupled to said processing means for displaying data provided by said processing means, the improvement comprising at least first and second optical transmitting and receiving means connected to respective ones of the at least first and second microcomputers, each of the processing means being coupled to a corresponding one of said optical means for selectively transmitting and receiving data and command functions by atmospheric optical transmission between said microcomputers, each of said processing means displaying both received and transmitted data on its respective associated display means, and each of said processing means being responsive to data and command functions received via atmospheric optical transmission from the other of the processing means as though such data and command functions were entered from its respective associated keyboard.