**AMERIKAM INC., Plaintiff,**

v.

**HOME DEPOT, INC., Defendant.**

**No. 1:99–CV–501.**

United States District Court,
W.D. Michigan,
Southern Division.

June 8, 2000.

R. Terrance Rader, Rader, Fishman & Grauer, PLLC, Grand Rapids, MI, for Amerikam Inc, plaintiff.

Rock A. Wood, Dickinson Wright, PLLC, Grand Rapids, MI, Paul T. Bowen, Darle M. Short, Thomas J. Pardini, Oliff & Berridge, Alexandria, VA, for Home Depot Inc, Home Depot, Inc., The, defendant.

Thomas F. Koernke, Boyden, Timmons, Dilley & Haney, PLC, Grand Rapids, MI, for VFM, mediator.

Rock A. Wood, Dickinson Wright, PLLC, Grand Rapids, MI, Thomas J. Pardini, Oliff & Berridge, Alexandria, VA, for Home Depot Inc, counter-claimant.

R. Terrance Rader, Michael F. Kelly, Rader, Fishman & Grauer, PLLC, Grand Rapids, MI, for Amerikam Inc, counter-defendant.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

ENSLEN, Chief Judge.

Plaintiff, Amerikam Inc. ("Amerikam"), designs and manufacturers plumbing fixtures. Defendant, Home Depot, Inc.

("Home Depot"), is a nationwide designer and retailer of materials and fixtures for the home. On July 7, 1999, Amerikam filed suit alleging that Home Depot was selling faucets, and in particular valve assemblies, that infringed on a patent owned by Amerikam.

Pursuant to the United States Supreme Court's decision in *Markman v. Westview Instruments Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), this Court heard evidence and argument concerning the meaning and scope of the ceramic disk patent which forms the basis of this lawsuit. The patent, known as the Chrysler Patent, was issued on December 29, 1992 ("Original Patent") (U.S.P.T.O. No. 5,174,-324) and reissued on July 1, 1997 ("Reissue Patent") (U.S.P.T.O. No. 35,545). The invention covered by these patents is a valve assembly that might be used in a kitchen or bathroom faucet. The valve assembly utilizes two ceramic discs to control the flow of water through the faucet. One of these discs rotates relative to the other. When openings on the discs are aligned, water passes through the discs. When the openings on the discs are not aligned, no water passes through the discs. The discs are held in place by a retainer.

The parties disagree about what the Reissue patent means in one crucial respect. Amerikam asserts that the claimed retainer is not limited to any particular type of material. Home Depot argues that only non-plastic retainers are covered by the Reissue patent.

■ In order to interpret the meaning of a patent, the Court must examine the intrinsic evidence of the patent which includes the claim language, the patent specification, and the patent's prosecution history. *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1581–85 (Fed.Cir.1996);

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995).[1]

## 1. The Patent Claims

■ The Court must begin with the claim language and give the words of the claims their ordinary and common meaning, unless other intrinsic evidence indicates that the inventor intended otherwise. *Vitronics*, 90 F.3d at 1582; *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619–20 (Fed.Cir.1995); *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527 (Fed.Cir.1995). Here, a review of the claims reveals that the claimed retainer has no limitation as to the type of material from which it must be constructed.

To begin with, of the seventeen claims in the Reissue Patent, only Claims 9, 10 and 11 describe the material from which the retainer is constructed. Claim 9, which is dependent on Claim 2, provides that the valve body and retainer are made of brass. Claim 10, which is dependent on Claim 1, provides that the valve body and retainer are made of metal. Claim 11, which is dependent on Claim 10, provides that the valve body and retainer are made of brass. Other than these three claims, no other claim in the Reissue patent discusses the material from which the retainer is to be constructed.

Instead, the retainer is defined in Claims 1–8 and 12–17 by the function it must serve.[2] Claim 1, for example, describes a ceramic valve cartridge and states that a "force-fit retainer" is positioned in such a way so that it is "positively located" relative to the body. Claim 2 provides that the retainer is "force-fit" and "frictionally secured." Claim 3 provides that the retainer is "positively located."

---

1. No extrinsic evidence is offered by the parties.

2. 35 U.S.C. Section 112(6) provides that:
   An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Claims 15, 16 and 17 also discuss the retainer, and repeat the functional descriptions provided in Claims 1, 2 and 3.

■ It is well settled that separate claims are presumed to indicate that the claims have different meanings and scope, and that limitations in dependent claims are not to be read into the independent claim from which they depend. *Karlin Technology Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed.Cir.1999). Therefore, because Claims 9, 10 and 11 are dependent on Claims 2, 1 and 10 respectively, the scope of these independent claims is not limited by the material specification found in dependent Claims 9, 10 and 11. *See Kalman v. Kimberly–Clark Corp.*, 713 F.2d 760, 770 (Fed.Cir.1983) ("where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad"). As a result, the Court reads Claims 1–8 and 12–17 as covering a retainer which is not limited to any particular type of material, but is limited insofar as it must be "force fit," "positively located," and "frictionally secured."

The parties did not provide the Court with any expert testimony regarding the meaning of "force fit," "positively located," or "frictionally secured." Therefore, unless the specification or prosecution history indicates otherwise, the Court must assign these phrases their ordinary meaning. *See Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed.Cir.1996) ("[a] technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning"); *York Prods., Inc. v. Central Tractor Farm & Fam. Center*, 99 F.3d 1568, 1572 (Fed.Cir. 1996) ("without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning"). The Court is not aware of any definition by which these words and phrases would imply any particular material lim-

itation. *See American Heritage Dictionary*, (3d Edition, 1996) (defining "force," "fit," "positive," "locate," "friction," and "secure" without reference to a particular material).

## 2. The Specification

■ Patent claims must be construed in light of the specification. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570 (Fed.Cir.1985). Courts should examine the specification to interpret what the patentee meant by a word or phrase in the claims. *E.I. du Pont de Nemours & Comp. v. Phillips Petroleum Comp.*, 849 F.2d 1430, 1433 (Fed.Cir.1988). This interpretation should not, however, add extraneous limitations appearing in the specification to the claims. *Id.* Instead, the specification should only be used to interpret what the patentee meant by particular words or phrases in the claim. *Id. See also Markman*, 52 F.3d at 978–80, ("for claim construction purposes, the [specification's] description may act as a sort of dictionary, which explains the invention and may define terms used in the claims."). Thus, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582.

Here, the Specification does not provide any explicit guidance as to what the phrases "force fit," "positively located," or "frictionally secured" mean. However, there is a passage in the Specification, under the heading "Background of the Invention," which discusses the use of plastic in constructing the retainer. This language provides:

> Valve cartridges are also known which include two ceramic discs secured within the valve body by a retainer. One such retainer is illustrated in U.S.Pat. No. 3,807,455 to Farrell which shows a valve body and retainer which are held together by ultrasonic welding. However, plastic parts do not have sufficiently stable properties for long term durability.

Additionally, ultrasonic welding increases the steps required to assemble the valve and may alter the body or retainer shape during welding.

Home Depot argues that this language indicates that the claimed retainer cannot be made of plastic. The Court is unpersuaded by this argument for three reasons. First, the claims do not specify the materials from which the retainer must be constructed. Additionally, the specification does not define the terms "force fit," "positively located," or "frictionally secured." Therefore, were the Court to adopt Home Depot's reasoning, and read the specification language as an indication that the inventor intended to disclaim plastic retainers, the Court would not be using the specification to interpret words or phrases in the claims. Instead, it would be adding an extraneous limitation to unambiguous claims in a manner explicitly discouraged by the case law. See E.I. du Pont & Co., 849 F.2d at 1433 (explaining that while it is proper to use the specification to interpret words or phrases in the claims, it is inappropriate to add extraneous limitations appearing in the specification). Second, although the inventor stated that "plastic parts do not have sufficiently stable properties for long term durability," this statement is not equivalent to stating that the claimed retainer cannot be made of plastic. This language simply expresses the inventor's belief that plastic parts are less durable than other materials, not that the use of plastic retainers is disclaimed. Third, in light of the fact that Claims 9, 10, and 11 reflect the inventor's concerns about plastic retainers, and are explicitly limited to metal retainers, the remaining claims should not be read with that limitation. See Specialty Composites v. Cabot Corp., 845 F.2d 981, 987–88 (Fed.Cir.1988) (explaining that although examples in specification showed only external plasticizers, the fact that dependent claims explicitly were limited to external plasticizers indicated that independent claims were not similarly limited). As a result, the Court does not believe that the Specification re-quires that the Claims be limited to the use of non-plastic retainers.

**3. Prosecution History**

Having concluded that the ordinary meaning of the claims does not limit them to the use of non-plastic retainers, and that the Specification language does not require such a limitation, the remaining piece of intrinsic evidence to consider is the prosecution history. Amhil Enterprises Ltd. v. Wawa, Inc., 81 F.3d 1554, 1559–60 (Fed. Cir.1996). Although the prosecution history can and should be used to understand the language used in the claims, it cannot "enlarge, diminish, or vary" the limitations in the claims. Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 227, 26 L.Ed. 149 (1880); Markman, 52 F.3d at 969; Intervet Am., Inc. v. Kee–Vet Labs., Inc., 887 F.2d 1050, 1054 (Fed.Cir.1989).

Home Depot argues that the prosecution history indicates that the inventor intended to equate a non-plastic retainer with a retainer that was "force-fit," "frictionally secured," and "positively located." According to Home Depot, the inventor of the Chrysler Patent repeatedly represented to the Patent Office that what made the Chrysler Patent non-obvious in light of two previous patents was the fact that the retainer in the Chrysler Patent was "force-fit," "frictionally secured" and "positively located" relative to the cartridge body and that this positive location was accomplished by a metal retainer. According to Home Depot, the inventor necessarily abandoned the use of a plastic retainers because the inventor represented to the Patent Office that plastic retainers could not be "force-fit," "frictionally secured" or "positively located."

The prosecution history of the Original Patent and the Reissue Patent includes a wealth of correspondence between the Patent Office and the inventor. One of the central issues which animated this correspondence was a disagreement between the Patent Office and the inventor con-

cerning whether the claimed invention was obvious in light of two previous patents—the Farrell Patent and the Napolitano Patent. The Farrell Patent covered a plastic valve assembly that utilized a plastic retainer which was welded to the cartridge. The Napolitano Patent covered a metal valve assembly that utilized an inner sleeve which was press-fit into the interior of the cartridge body. The Court has reviewed this correspondence and reached the following conclusions.

First, at no point in the prosecution history did the inventor ever explicitly state that plastic retainers were disclaimed. *See York Prods.,* 99 F.3d at 1574 ("unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage").

Second, at no point in the prosecution history did the Patent Office ever require or suggest that the inventor amend the claims to specify that only non-plastic retainers were claimed. *Id.*

Third, the correspondence between the Patent Office and the inventor was not focused on the type of materials used to construct the retainer, but whether the Chrysler invention was obvious because it was simply a combination of the force-fit design used in the Napolitano Patent and the ceramic disc design found in the Farrell Patent. Analyzed in this context, the inventor's statements about the unreliability of plastic, and the uniqueness of a retainer that is "force-fit," "frictionally secure" and "positively located," are best understood as reasons that a simple combination of Farrell and Napolitano would not produce the Chrysler Patent, not reasons why plastic retainers are not covered by the Chrysler Patent claims.

Therefore, the Court does not believe that the prosecution history requires that the claims be read to include a non-plastic retainer limitation.

## Conclusion

Based upon the claims, the specification language and the prosecution history, the Court finds that the Chrysler Patent is not limited to non-plastic retainers. The Court reaches this conclusion because the Claims do not contain a non-plastic retainer limitation, and because the Court is not convinced that the Specification and prosecution history indicate that plastic retainers were disclaimed by the inventor. The Court determines this as a matter of law. This ruling is binding on subsequent proceedings in this lawsuit consistent with the holding in *Markman,* 517 U.S. at 370, 116 S.Ct. 1384.