**AMERICAN SEATING COMPANY,**
**Plaintiff/Counterclaim Defendant–**
**Cross–Appellant,**

v.

**TRANSPORTATION SEATING, INC.,**
**Defendant/Counterclaimant–**
**Appellant,**

and

**Richard D. Craft, Counterclaimant–**
**Appellant.**

Nos. 02–1300, 02–1323.

United States Court of Appeals,
Federal Circuit.

DECIDED: March 26, 2003.

Before BRYSON, GAJARSA, and PROST, Circuit Judges.

PROST, Circuit Judge.

Transportation Seating, Inc. ("TSI") appeals from the final judgment of noninfringement of U.S. Patent No. 6,113,325 ("the '325 patent") by American Seating Corporation ("American") entered by the United States District Court for the Western District of Michigan after the district court granted American's motion for partial summary judgment of noninfringement

and denied TSI's motion for partial summary judgment of infringement. American cross-appeals the district court's final judgment of noninfringement of U.S. Patent No. 5,888,038 ("the '038 patent") by TSI entered after the district court granted TSI's motion for partial summary judgment of noninfringement and denied American's motion for partial summary judgment of infringement. We *affirm* the judgments of noninfringement.

This court reviews a grant of summary judgment *de novo,* drawing all reasonable factual inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 247–52, 106 S.Ct. 2505. Claim construction is an issue of law that we review *de novo. Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc). We also determine *de novo* whether the evidence in the record raises any genuine disputes about material facts. *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1353, 50 USPQ2d 1910, 1912 (Fed.Cir.1999). Jurisdiction in this court is proper under 35 U.S.C. § 1295(a)(1).

I

The '325 patent is for a "Wheelchair Restraint System for a Transportation Vehicle." At issue on appeal is the meaning of the terms "bulkhead," "stowed" and "substantially within" as used in claims 24 and 31 of the patent, which read in pertinent part:

24. A wheelchair restraint system ... comprising: ...

a front bulkhead ... including an extendable anchor member which extends

**346**

transverse relative to the longitudinal vehicle axis providing a second anchor location, said anchor member being extendable between a stored position in which said anchor member is stowed *retracted in a non-operating position and a deployed position wherein said anchor member is extended from said bulkhead;* . . . .

31. A wheelchair restraint system . . . comprising . . .

a bulkhead assembly . . . including a stationary housing and a movable anchor, said anchor being movable along a longitudinal axis thereof substantially transversely of said vehicle axis between an operative position spaced from said housing and a retracted position substantially within said housing; . . . .

■ The district court construed the term bulkhead to mean "a structure of substantial, three-dimensional size which defeats tripping by enclosing in a partitioned manner the front locking mechanisms including anchor member and belt assemblies." TSI argues that this definition is erroneous because it relies on a misinterpretation of the file history, improperly imports limitations from the written description into the claim, fails to consider the doctrine of claim differentiation, and is improperly based on extrinsic expert witness testimony. According to TSI, "bulkhead" should mean "a stationary housing and a slidable anchor relative to the housing."

To determine the proper meaning of the disputed claim terms, we look first to the language of the claims. *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1344, 63 USPQ2d 1769, 1772 (Fed.Cir.2002) ("The words of the claims themselves define the scope of the invention, and are given their ordinary and customary meaning, unless the patentee has chosen to use terms in some other manner."). Claim 24 requires

that the bulkhead "stow" an anchor member "retracted in a non-operating position." Similarly, claim 31 requires that the bulkhead have a "stationary housing" that contains a movable anchor "substantially within said housing" when the anchor member is in a "retracted position." Thus, the plain language of the claims indicates that a bulkhead is a structure for stowing or containing.

We look next to the specification to further understand the meaning of the term bulkhead. *Id.* (stating that "the specification is 'the single best guide to the meaning of a disputed term' ") (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed. Cir.1996)). The specification of the '325 patent does not specifically define "bulkhead," although the term is used repeatedly when describing the invention. For example, a "front anchor bulkhead" is shown in Figures 1–3, 6 and 7 of the '325 patent as element D. These figures show the bulkhead as having a box-like housing 52, which contains a slidable anchor 54 having an attached belt assembly. The written description describes bulkhead D as follows:

A front anchor bulkhead, designated generally as D, is carried near a front portion of the securement area for securing the front of the wheelchair. There is a front wheelchair attachment assembly, designated generally as E, for attaching the wheelchair to the front bulkhead. It will be noted at this point, that barrier B and front anchor bulkhead D extend away from side wall 16a of the vehicle transversely to a longitudinal axis 50 of vehicle 11. As can best be seen in FIGS. 1, 3, and 6–7A, front anchor bulkhead D includes a housing 52 with suitable reinforcement *in which a slidable anchor 54 is enclosed and stored.* Slidable anchor 54 has a de-

ployed position (FIG.6) and a stored position (FIG.7). *In the stored position, a retractable crank/belt assembly, designated generally as 56, is stowed away.* In the deployed position of FIG. 6, the belt/crank assembly 56 includes a retractable attachment belt 58 which is anchored to the wheelchair, as can best be seen in FIG. 1. *When the belt/crank assembly is stowed, it can be seen that the anchor 54 and belt/crank assembly 56 are stored away clearly out of a position in which a regular passenger may trip over the structure.*

'325 Patent, col. 4, l. 59—col. 5, l. 12 (emphases added). Thus, the description in the specification of the bulkhead is consistent with the language of the claims requiring the bulkhead to stow or substantially contain the anchor assembly.

Based on the plain language of the claims and the specification of the '325 patent, we conclude that claim 24 requires as a bulkhead a structure that can stow the claimed anchor member. Similarly, we conclude that claim 31 requires as a bulkhead a structure with a housing that can contain the claimed anchor member substantially within the housing. We see nothing in the prosecution history that is contrary to these meanings.

The parties also dispute the meaning of the claim terms "stowed" and "substantially within." With respect to the term "stowed," TSI argues that the term does not require that the anchor member be completely contained by the bulkhead. Rather, the anchor member can be partially contained and still be considered "stowed." While the term is therefore somewhat ambiguous, the specification makes clear the meaning of "stowed" in the context of the invention. *See Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325, 63 USPQ2d 1374, 1381 (Fed.Cir.2002) ("The specification

may assist in resolving ambiguity where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."). When the anchor member, including the strap assembly, is in the "stowed position" it is "stored away clearly out of a position in which a regular passenger may trip over the structure." '325 Patent, col. 5, ll. 8–12. The figures further show that when the anchor member is stowed, it is completely contained within the bulkhead D. We conclude that claim 24 requires the bulkhead to stow the anchor member by containing it at least enough to prevent a passenger from tripping over it, if not altogether containing the anchor member. Likewise, "substantially within" as used in claim 31 is ambiguous to the extent it is unclear how much of the anchor member must be contained within the bulkhead housing to be considered "substantially within" the housing. *See, e.g., LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.,* 275 F.3d 1347, 1354, 61 USPQ2d 1193, 1198–99 (Fed.Cir.2001) (construing the phrase "substantially completely wetted"); *York Prods. v. Cent. Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1572–73, 40 USPQ2d 1619, 1622–23 (Fed.Cir.1996) (construing the phrase "a substantial part of the entire height"). The natural meaning of this claim language would be that most, but not necessarily all, of the anchor member must be contained within the housing. *See York Prods.,* 99 F.3d at 1573, 40 USPQ2d at 1622 (stating that "the modifier 'substantially' conveys that the ridge members extend over most of the 'entire height'"); *LNP Eng'g,* 275 F.3d at 1354, 61 USPQ2d at 1199 (stating that "substantially completely wetted" means "largely, but not necessarily wholly, surrounded by resin"). The specification further explains that the reason why the anchor member should be contained within the housing is to prevent

tripping. We therefore conclude that claim 31 requires the bulkhead housing to contain most of the anchor member and to such an extent as to prevent a passenger from tripping over the anchor member.

The parties agree that the structure of the American wheel chair restraint system is shown in Figures 8A and 8B of the '038 patent. The structure is further described in the affidavits of John Adelsperger. As shown in Figure 8, the restraint is comprised of a movable element 2 that can extend in a telescoping fashion to a location where it can be locked to the floor of the vehicle. The movable element 2 has a mounting plate or bracket 30. A housing for a retractable strap is bolted to this mounting plate. Movable element 2 also has a reduced diameter tube-like portion 60 which, when the restraint is not in use, is received within a fixed bracket 58. In order to telescope movable element 2 to an operating position, the element 2 is pulled away from element 58, thus drawing inner tube 60 out of element 58, as shown in Figure 8B. TSI equates element 58 to the bulkhead and element 2 to the extendable anchor member of claims 24 and 31.

█ We disagree. With respect to claim 24, elements 58 and 2 do not meet the limitation of "a front bulkhead ... including an extendable anchor member which ... is stowed retracted in a non-operating position." While the tube portion 60 of element 2 may be contained within element 58 in a non-operating position, at all times the anchor portion of element 2 (having the mounting plate and retractable strap housing) remains wholly outside of element 58. According to the Adelsperger declaration, "[b]ecause the mounting plate and retractor housing are always outside of the outer tube [58], they present a substantial tripping hazard unless they are removed from the area where passengers are likely to walk, such as the

aisle of the bus." Thus, assuming that element 58 can be considered a bulkhead, the American structure nevertheless fails to meet the requirement that the extendable anchor member be stowed by being sufficiently contained within a bulkhead to prevent tripping. We note in this regard that TSI's summary judgment briefing disputes whether the American device is sufficiently stowed to prevent tripping. However, TSI has not identified any record *evidence* to refute the Adelsperger declaration. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, *by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.*" (emphasis added)). Once American presented its case for summary judgment of noninfringement, the burden shifted to TSI to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could find there to be a genuine issue of fact for trial. *Anderson,* 477 U.S. at 248–50, 106 S.Ct. 2505. TSI has not done so on the issue of whether the American restraint is sufficiently stowed to prevent tripping.

Similarly, with respect to claim 31, elements 58 and 2 do not meet the claim limitation of "a bulkhead assembly ... including a stationary housing" that contains a moveable anchor member "substantially within the housing" when in a retracted position. While tube 60 may be contained within element 58 when the restraint is in the retracted position, at all times the anchor portion of element 2 remains wholly outside of element 58. Thus, assuming for the moment that element 58 could be considered a bulkhead housing, it does not contain sufficient structure to meet the

limitation requiring containment "substantially within the housing" to such an extent as to prevent a passenger from tripping over the anchor member.

Based on our interpretation of the claim limitations and the evidence of record, we conclude that there are no genuine issues of material fact regarding whether the American restraint infringes claims 24 and 31 of the '325 patent. We therefore affirm the district court's grant of American's motion for summary judgment of noninfringement.[1]

## II

■ The '038 patent is for a "Tie–Down for Wheelchairs." At issue on appeal is whether TSI's Model 5800 has a moveable securing element that is "locked to said vehicle" as required by claim 1 of the patent. Claim 1 reads:

In combination,

(a) a vehicle having an area for receiving a wheelchair, and

(b) means for securing a wheelchair in said area to said vehicle, wherein said means for securing is permanently attached to said vehicle and comprises:

(i) means for engaging a portion of said wheelchair under tension, said means for engaging being locked to said vehicle at a predetermined location, and

(ii) *a movable securing element* having mounted thereon a housing and a flexible strap, said flexible strap having one end adjustably received in said housing and an opposite end adapted to engage a portion of said wheelchair in said area under tension, said movable securing element being movable with respect to said vehicle between an operating position wherein said housing is *locked to said vehicle at a further location* for cooperation with said means for engaging to secure said wheelchair and a storage position wherein said housing is remote from said further location (emphases added).

The district court determined that the "'locked' limitation does not require a specific type of locking mechanism, nor require a specific location for the locking mechanism on the moveable securing element." "Locked" means "fixed in place so that movement is impossible."

The TSI Model 5800 is described by the '325 patent, the declarations of Keith McDowell, and the declaration of Richard Craft. The Model 5800 includes a box-like compartment that contains a slidable arm having a strap assembly for attachment to a wheelchair. When not in use, the arm is contained within the compartment. When in use, a door of the compartment flips open and the arm slides forward along a track until its egress is stopped by a bar on the flip door. The strap at the end of

---

1. TSI argues that we must remand for a determination of infringement under the doctrine of equivalents. According to TSI, American's motion for summary judgment of noninfringement was limited to the issue of literal infringement. We disagree. American's motion requested "summary judgment of non–infringement"–not summary judgment of no literal infringement. TSI's response to American's motion was to argue that the case turned on claim construction, saying that "a proper claim construction, an issue of law, will decide this case." TSI's strategic decision to rely solely on claim construction belies its present argument that it had a doctrine of equivalents theory as well. If TSI had a basis for asserting infringement under the doctrine of equivalents, it should have been raised during the summary judgment proceedings, instead of representing to the district court that the case could be resolved based only on the legal issue of claim construction.

the arm can then be attached to the wheelchair. American contends that the strap assembly corresponds to the claimed housing and that the housing is locked to the vehicle when in an operating position by a friction lock, caused by the tension of the strap when it is connected to a wheelchair. According to American, the tension locks the movable slide arm to the track element that guides the movement of the arm; the track is bolted to the storage compartment and the compartment is bolted to the vehicle; hence, the housing is locked to the vehicle. American argues that the district court erroneously found noninfringement on the basis that TSI's device requires the presence of a wheelchair in order for there to be a lock.

We disagree. The operative language in this case is the requirement that the housing be locked *to the vehicle*. The 5800 is configured such that the strap assembly is locked *to the wheelchair* by virtue of the tension-induced friction lock described in both the McDowell and Craft declarations. However, if the wheelchair should move, so too could the strap assembly. This very distinction–between being locked to the vehicle versus locked to the wheelchair–was highlighted during prosecution of the '038 patent. The applicant distinguished his invention from U.S. Patent No. 4,093,303 in a petition to make special, stating:

> Applicants' invention as set forth in claim 1 includes a movable element that carries one of the means for engaging the wheelchair. The movable element may be placed in one position where the means for engaging is secured to a desired location spaced from the side wall of the vehicle and a second location displaced toward the side wall. This contrasts with the structure shown in the '303 patent where arms 11 and 12 are pivotally connected at 27 and 29 and, thus, *do not lock the positions of the clamping jaws.* Instead, the clamping jaws engage the wheels of the wheelchair and urge them against the stationary rail. *The arms are held in position by the engagement with the wheels and would move if the wheels moved, as they would in an accident.*

In a similar manner, the strap assembly of the 5800 is held in position by virtue of its connection to the wheelchair, not to the vehicle. We therefore affirm the district court's judgment of noninfringement of the '038 patent.

## CONCLUSION

For the foregoing reasons, we affirm the final judgment of noninfringement by American of the '325 patent and the final judgment of noninfringement by TSI of the '038 patent. We have considered the other arguments raised by the parties and find them to be unpersuasive.