**KRESS CORPORATION, Plaintiff,**

v.

**ALEXANDER SERVICES, INC., Alexander Mill Services, Inc., Defendants,**

v.

**LIFTKING INCORPORATED, Third–Party Defendant.**

No. CIV. A. 94–0979.

United States District Court, W.D. Pennsylvania.

March 10, 1997.

Paul A. Beck, George Raynovich, Jr., Pittsburgh, PA, Berton Scott Sheppard, James A. Flight, Leydig, Voit & Mayer, Chicago, IL, for Kress Corp.

David C. Hanson, Frederick B. Ziesenheim, Webb, Burden, Ziesenheim & Webb, Pittsburgh, PA, for Alexander Services, Inc., Alexander Mill Services, Inc.

George P. Faines, Craig E. Frischman, Michael J. Kline, Thorp, Reed & Armstrong, Pittsburgh, PA, for Liftking Inc.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court are the cross motions of the parties for summary judgment pursuant to Fed.R.Civ.P. 56(c). Plaintiff, Kress Corporation, seeks summary judgment with respect to its claims of patent infringement under 35 U.S.C. § 271. Defendants, Alexander Services, Inc., Alexander Mill Services, Inc. and Liftking Incorporated, also seek summary judgment with respect to the asserted claims. For the reasons that follow, we will grant defendants' motion for summary judgment and deny plaintiff's motion for judgment.

This civil action arises from the alleged infringement by defendants of Kress's patent, U.S. Patent Number 4,063,658 ('658 patent). The patent in question describes a carrier capable of transporting slag pots full of molten steel waste from a steel mill to a slag dump. When full, the slag pots weigh from 35 to 200 tons.

The first three of the patent's four claims are relevant to this action. Claim one, which is independent of the other claims, describes the carrier itself. It consists of a large U-shaped cradle, which holds the slag pot, resting horizontally atop a similarly-shaped wheeled frame. The cradle and frame are attached at the open ends, allowing the cradle to pivot up and over the end of the frame. A series of levers and linkages attached to both the frame and the cradle control the arc of the cradle as it pivots. Finally, a pair of "linear actuators" or pistons are attached from the frame to the levers. When the actuators are extended, the cradle pivots up and along an arc from the horizontal position, through a second "carrying" position, and finally beyond vertical to a dump position. The actuators can swing the cradle up to 140 degrees from the horizontal to the dump positions.

Claim two describes "struts" attached to the frame, which support the cradle while in the carrying position. The struts remove some of the weight from the main actuators, levers and links. The third claim calls for the struts to be in the form of linear actuators, which also support the cradle while in the carrying position.

Kress alleges that defendants designed, built and sold four carriers that infringe its patent. The Alexander companies produced two of the carriers, and sold them to Washington Steel Company. Liftking similarly produced two carriers, which were sold to the Darlington Steel Company. Defendants admit that their carriers contain many of the components and structures described in the '658 patent. However, defendants assert that (1) their carriers require an auxiliary set of linear actuators to move the cradle to the second, or carrying position, and (2) that the patent, as properly construed, does not cover their carriers. Both sides have moved for summary judgment as to the infringement claims.

Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must examine the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In determining whether an accused product infringes a patent, we must apply the following procedure recently announced by the Court of Appeals for the Federal Circuit:

> An infringement analysis requires two separate steps. First, the court must construe the claims asserted to be infringed as a matter of law in order to establish their meaning and scope. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Second, the claims as construed are compared to the allegedly infringing device. *Id.* To literally infringe, the accused device must contain every limitation of the asserted claim. *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed.Cir.1991).

*Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1105 (Fed.Cir.1996). Even if the accused device does not literally infringe, it may infringe under the doctrine of equivalents if the differences between the elements of the claimed invention and the accused device are 'insubstantial.' *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

■ Where a dispute concerns the scope of the patent claims, we must consider three sources, including the claims themselves, the specification and the prosecution history. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim terms are given their "ordinary and accustomed meaning unless examination of the specification, prosecution history and other claims indicates that the inventor indicated otherwise." *Transmatic, Inc. v. Gulton Industries, Inc.,* 53 F.3d 1270, 1277 (Fed.Cir. 1995).

## Claim Interpretation

■ First, we will examine the scope of the claims themselves. Here, the patent claims refer to only one set of linear actuators capable of moving the cradle.[1] Although claim three refers to another set of actuators, the claim discusses only the manner in which the actuators support the cradle once it is lifted into the second position.[2] We therefore find that the "ordinary and accustomed meaning" of the claim language does not allow for coverage of secondary linear actuators that move the cradle to the carry position.

Kress argues that language from the patent's specification should be construed to cover devices that have such structures. Defendants rejoin that the specification language does not support such a finding, and that the prosecution history of the patent similarly limits the patent coverage.

Both sides agree that the patent's specification section discusses the role of the second pair of actuators, mentioned in claim three, in lifting the slag pot to the "carry," or

---

[1] The relevant section of claim one describes the activity of the main linear actuators as follows:
[A] pair of linear actuators mounted on [the] frame and connected to [the] levers for swinging said levers and thus tilting [the] cradle about its pivots from the said first position through a second position, wherein the pot is raised from the ground but held substantially level and to a third position where in the pot is tipped by abutting an abutment on the cradle and is at least partially inverted into a dumping position.

Patent 4,063,658 col. 4, lines 8–16.

[2] Claim 3 reads as follows:
3. The combination of claim 2 in which said struts are linear actuators which, when fully extended, support said cradle so that the pot is slightly tilted to the rear to minimize spilling to the front and reduce sway.

Patent '658 at col. 2, lines 25–28.

second, position. However, they disagree on the effect of the specification language.

■ A patent's claims "must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979, (citing *Autogiro Co. of America v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 397 (1967)). "The specification contains a written description of the invention that must enable one of ordinary skill in the art to make and use the invention." *Markman*, 52 F.3d at 979. For claim construction purposes, "the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Id.* "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996)(citing *Markman*, 52 F.3d at 979).

The specification section of the '658 patent reads, in pertinent part:

> To eliminate the load on the main actuator hydraulic system and its links during travel of the carrier while carrying a loaded pot, *as well as to assist the main linear actuators ... in picking the pot off the ground,* a pair of struts in the form of simple two-position linear actuators ... are mounted on the frame.

Patent '658 at col. 2, lines 56–61 (emphasis added). Kress argues that the words in the specification expand the claims' meaning by defining the use of the struts. Defendants rejoin that the description of the linear actuators in the specification is not a definition, but describes an alternative system not covered in the claims. We agree.

We find that the specification quoted above cannot reasonably be construed to define the "linear actuators" described in claim three. Rather, it describes a use for the actuators that is not mentioned in the claims. The language of the specification states that the actuators have two uses: (1) eliminating the load on the other systems, and (2) assisting the main linear actuators in lifting the pot. Claim two specifically discusses the first of these abilities;[3] however, neither claim two nor claim three details the ability to move the cradle. Claim three describes only "the combination of claim 2, in which said struts are linear actuators which, when fully extended, support said cradle so that the pot is slightly tilted to the rear to minimize spilling to the front and reduce sway." Patent '658 at col. 2, lines 56–61. The language of the specification, rather, discusses a separate use for these actuators, outside those discussed in the claims.

■ Where, as here, a patentee discloses subject matter in the patent specification but fails to include it in the claims, the material is deemed "dedicated to the public." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed.Cir.1996)(quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed.Cir. 1991)). We find that the relevant subject matter here, concerning the use of the secondary linear actuators in lifting the cradle to the second position, is dedicated to the public.

We also note that, in describing the overall invention, the specification states that "it is an object of the invention to provide a carrier ... that utilizes only two major working linear hydraulic actuators and two small simple holding cylinders." Patent '658 at col. 1, lines 25–28. This statement further strengthens defendants' argument that the use of the actuators mentioned in claim three cannot be expanded to include lifting the pot from the ground. Rather, the actuators are limited to their use as "holding cylinders."

■ Defendants also argue that the patent should be limited because of various statements made by the inventors during the prosecution history. Where an applicant makes arguments and amendments during the prosecution of a patent, we may examine the statements in determining the meaning of the terms in the claims. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d

---

**3.** Claim two reads as follows:

2. The combination of claim 1 including a pair of positionable struts on said frame and adapted to be positioned for underlying and supporting said cradle in its second position and thereby removing the forces on said levers, links and actuators.

Patent '658 at col. 2, lines 19–24

1570, 1576 (Fed.Cir.1995). "Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Id.* However, "unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage." *York Products, Inc. v. Central Tractor,* 99 F.3d 1568, 1575 (Fed.Cir. 1996).

Kress originally applied for the patent on August 9, 1976. During the prosecution, the Patent Office rejected the application because of similarities between claim one and a number of existing patents, including a British patent. The British patent described a slag pot carrier that used two separate sets of linear actuators in lifting and dumping the slag pot. *See* Pl. Reply Br. Exh. A. The linear actuators moved the captured pot in two separate arcing motions while performing the carry and dump processes. *Id.*

In May 1977, Kress's attorneys contested the Patent Office's rejection. In their statement, they noted that the British patent required "two sets of actuators ... one to initially lift the pot and a second set to perform the tilting function." *See* Def. Exh. d–4 in support of their joint motion. Claim one of the plaintiff's device differed, they argued, because it used "only a pair of linear actuators which ... produce[d] three different positions of the cradle." *Id.*

■ The Patent Office subsequently allowed Kress's first claim with an amendment relating to the manner in which the primary linear actuators move the pot, rather than the number of actuators needed. Pl. Exh. 1C. However, statements made during the prosecution history are relevant in claim construction regardless whether the claim is modified on the basis of that particular argument. *Amhil Enterprises, Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1560 (Fed.Cir.1996).

Defendants argue that Kress's statement to the Patent Office limits the coverage of the first claim of plaintiff's patent to carriers with "only one" pair of linear actuators that lift the pot to the second and third positions. We agree.

■ Kress argues that claim one cannot be limited in this manner because of the wording of claim three. Claim three is dependent on claim one, insofar that it can be applied only in combination with claim one. The scope of an independent claim must be construed to allow for the application of all dependent claims in the patent. *Laitram Corp. v. NEC Corp.,* 62 F.3d 1388, 1393 (Fed.Cir.1995). Plaintiff argues that because claim three calls for the addition of a secondary pair of linear actuators, claim one cannot be limited to allow for only one pair. We agree. However, as rehearsed, the specification limits the patent as a whole to one pair of actuators that perform the lifting function. Therefore, plaintiff cannot claim that carriers with more than one set of actuators that perform the lifting function infringe its patent.

In sum, based on the language of the claims, specification and the prosecution history, we find that the coverage of the '658 patent is limited to carriers that use "only a pair of linear actuators which produce three different positions of the cradle."

### Infringement Analysis

■ In an attempt to show infringement, Kress has provided a series of photographs of the accused carriers alongside the text and drawings from the patent. *See* Pl. Exh. 15, 24, 25, 28. As viewed through these exhibits, defendant's carriers appear similar to the patent's schematic drawings, and seem to contain all the component parts listed in the patent.

Defendants argue, however, that their products do not infringe because they require two pairs of linear actuators to lift the slag pot from the ground, whereas plaintiff's patent coverage is limited to those that use only one pair to perform the lifting function.

Of the four accused carriers, Liftking built two for Darlington Steel Co., and the Alexander companies built two for Washington Steel Co. These carriers differ concerning the ability of the secondary actuators.

Defendants have submitted a sworn declaration from Peter McFarlane, Liftking's senior design engineer. In his affidavit, McFarlane states that the secondary linear

actuators on the Liftking carriers "perform all the work of lifting a slag pot from the ground to the carry position." Decl. of Peter McFarlane at 3–4. He further states that if only the main actuators were used to lift the slag pot, the Darlington carriers "could not lift, carry or dump" a full slag pot. *Id.* at 4.

Defendants have submitted a similar declaration from John R. Burkert, the resident equipment designer for Alexander Mil Services, Inc. In his declaration, Burkert states that he originally designed the Alexander carriers with only one set of linear actuators. Decl. of John R. Burkert at 3. However, due to a miscalculation, the one pair could not lift full slag pots. *Id.* He subsequently added the second set, before having safety engineers test the pots. *Id.*

Kress argues that the addition to the Alexander carriers was not necessary because that they could lift some pots weighing 46,-000 pounds (23 tons) without the additional actuators. However, plaintiff does not dispute that the carriers were not sold or put into use until the additional pair of actuators were installed on the carriers. Further, plaintiff does not dispute that the carriers would not have been satisfactory to the Alexander companies' customers without the additional actuators. We therefore find that both the Liftking and the Alexander companies' slag pot carriers require more than one set of linear actuators to lift the cradle from the horizontal position to the second position.

Because we find that defendants' carriers require a second set of linear actuators to perform the lifting function, Kress's claim of literal infringement fails. Literal infringement requires that the accused device "contain every limitation of the asserted claim." *Maxwell,* 86 F.3d at 1105. As stated, plaintiff's patent is limited by statements made in the prosecution history to carriers that use "only a pair of linear actuators which produce three different positions of the cradle." Because defendants' carriers require two linear actuators to perform this function, they do not literally infringe.

■■■■ The same conclusion obtains with respect to our analysis of the patent specification. "When an accused infringer practices disclosed but unclaimed subject matter," this also precludes a finding of literal infringement. *Maxwell,* 86 F.3d at 1107. As stated above, the patent discloses, but does not claim, the subject matter concerning the ability of the secondary actuators from claim three in "assist[ing] the main linear actuators in picking the pot off the ground." This subject matter, as stated, is "dedicated to the public" and the use by an accused infringer precludes a finding of literal infringement.

### Doctrine of Equivalents Analysis

■■■■ Under the doctrine of equivalents, a product that does not literally infringe may still be found to infringe if "it performs substantially the same function in substantially the same way to obtain the same result." *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1579 (Fed.Cir.1995)(citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)); *see Warner–Jenkinson Co.,* 520 U.S. at 17, 117 S.Ct. 1040, 1053, 137 L.Ed.2d 146. However,

> A patentee may not narrowly claim his invention and then, in the course of an infringement suit, argue that the doctrine of equivalents should permit a finding of infringement because the specification discloses the equivalents. Such a result would merely encourage a patent applicant to present a broad disclosure in the specification of the application and file narrow claims, avoiding examination of broader claims that the applicant could have filed consistent with the specification.

*Maxwell,* 86 F.3d at 1107.

■■■■ The use of disclosed, but not claimed, subject matter by defendants also precludes a finding of infringement under the doctrine of equivalents. *Maxwell,* 86 F.3d at 1107 (citing *Genentech, Inc. v. Wellcome Found., Ltd.,* 29 F.3d 1555 (Fed.Cir.1994)).

As rehearsed, we have found that the patent discloses, but does not claim, the subject matter concerning the ability of the secondary actuators in "assist[ing] the main linear actuators in picking the pot off the ground." Because the accused devices utilize this subject matter, we may not make a finding of

infringement under the doctrine of equivalents.

### Conclusion

We find, as a matter of law, that Kress's patent is limited by its claims, specification and prosecution history to slag pot carriers that use only one set of linear actuators to lift the slag pot cradle from the ground to a carry position. We further find that defendants' carriers use a second set of linear actuators to lift the cradle to the carry position. Because defendants' carriers function in this manner, they neither literally infringe plaintiff's patent, nor infringe by way of the doctrine of equivalents. An appropriate order will follow granting defendants' motion for summary judgment.

### *ORDER*

AND NOW, this 10th day of March 1997, after consideration of the cross-motion the parties for summary judgment,

IT IS ORDERED that the motion of plaintiff, Kress Corporation, for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that the motions of defendants, Alexander Services, Inc., Alexander Mill Services, Inc. and third party defendant, Liftking Incorporated, for summary judgment be and hereby are granted.