SEB S.A., Plaintiff,

v.

MONTGOMERY WARD & CO., INC., Global–Tech Appliances, Inc., and Pentalpha Enterprises Ltd., Defendants.

No. 99 Civ. 9284(BDP).

United States District Court,
S.D. New York.

Nov. 23, 1999.

Norman Zivin, Cooper & Dunham, New York City, NY, for plaintiff.

William Dunnegan, Perkins & Dunnegan, New York City, NY, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff, SEB S.A. ("SEB") commenced this action against Montgomery Ward & Co., Inc., Global–Tech Appliances, Inc., and Pentalpha Enterprises Ltd., claiming that a deep fryer, marketed by Montgomery Ward and manufactured by Global–Tech, infringes United States Patent No. 4,995,312 (the "'312 Patent"). *See* 35 U.S.C. § 271.

SEB moved by Order to Show Cause on September 10, 1999 for a preliminary injunction. Montgomery Ward appeared and opposed the motion, while Global–Tech and Pentalpha challenged the existence of personal jurisdiction in this Court. The application for the preliminary injunction was combined with the *Markman* hearing. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The Court invited additional submissions by the parties and heard arguments of counsel on October 14, 1999. Subsequently, Pentalpha has appeared in this action.

The relevant facts are not substantially in dispute, although their legal consequences are contested. The essential controversy in this litigation is whether the '312 Patent permits the deep fryer's inner pan to be stabilized by a screw. This Court concludes that it does and, consequently, construes the claims at issue, makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 65(d), and grants interlocutory relief.

## FINDINGS OF FACT

1. Plaintiff SEB S.A. is a French company doing business in this District through its affiliate T–Fal Corporation ("T–Fal"). Through T–Fal, SEB sells a number of consumer appliances, including the deep fryer at issue in this lawsuit, to retailers throughout the United States including those in this District. Montgomery Ward has sold a very similar deep fryer under the Admiral brand. The Admiral fryer is "the accused product".

2. Pentalpha is a corporation based in Hong Kong. Pentalpha is engaged in the manufacture and sale of small household appliances, including deep-fat fryers. Pentalpha manufactured and sold the accused product to Montgomery Ward.

3. Global–Tech is a corporation with its principal place of business in Hong Kong. Global–Tech and Pentalpha are affiliated Hong Kong corporations.

4. Montgomery Ward is a national chain of retail stores that imports and sells consumer appliances, including deep fryers. Montgomery Ward competes with SEB's customers throughout the United States including those in the State of New York and the Southern District of New York.

5. The appliance subject to the '312 Patent is the SEB "supercool" safety fryer invented around 1988. The '312 Patent was issued in February 1991 and was subsequently assigned to SEB. SEB has not granted licenses under this Patent, apparently preferring to maintain exclusive rights to sell the product.

6. The SEB "supercool" deep fryer solved a problem which existed prior to its invention. Previously, deep fryers generally had metal or aluminum outer walls, which, when touched by a user, could

cause burns as a consequence of the high temperatures achieved during use and, in addition, experienced substantial heat losses while in operation. Moreover, these models had the aesthetic disadvantages associated with the use of high heat resistant metals. One solution to these problems had been to construct the entire wall or skirt from a plastic material able to withstand extreme temperatures. The drawback of this approach, however, was that the use of heat resistant plastics tended to make products prohibitively expensive for household use.

7. The "supercool" deep fryer was designed to remedy these deficiencies by allowing the use of standard, comparatively low-cost, plastic materials. The SEB fryer, in substance, addressed these problems by eliminating "thermal bridges" between the metal pan and the plastic outer skirt of the fryer. The absence of thermal bridges means the existence of an insulating gap between the inner metal frying pan and the outer decorative plastic skirt.

8. The SEB deep fryer employs a ring made of heat resistance plastic to hold the metal pan in place and the metal pan is suspended from the ring which, in turn, is attached to the top of the plastic skirt. This assembly permits the skirt to be insulated from heat at the point of contact and also permits the minimal use of expensive heat-resistant plastics.

9. In addition, the metal pan is stabilized by a pin attached to the bottom of the pan which extends through an insulated shaft in the base of the housing. Because of the heat-resistant insulated shaft, the pan does not establish a thermal bridge between the metal pan and the skirt. The controversy in this litigation boils down to whether claim 1 permits the use of this pin.

10. The SEB "supercool" deep fryer has achieved substantial commercial success in the United States. It is sold in mass merchandise stores such as Wal–Mart and K–Mart and speciality shops such as Zabar's and Fortunoff. Sales have been high.

11. The '312 Patent has 13 claims, including 1 independent claim, which is claim 1.

12. Claim 1 of the '312 Patent recites:

An electrical deep fryer comprising a metal pan having a wall, and an electric heating resister that heats said wall directly by conductive heating to a temperature higher than 150˚ C., said pan being surrounded by a plastic skirt, wherein said skirt is of plastic material which does not continuously withstand a temperature of 150˚c., said skirt entirely surrounding the lateral wall and said base of the pan being separated from said wall and said base by an air space of sufficient width to limit the temperature of the skirt to a value which is compatible with the thermal resistance of the plastic material of the skirt, said skirt being completely free with respect to the pan with the exception of a ring which joins only the top edge of the skirt to the top edge of the pan and to which the latter is attached, said ring being of heat-insulating material which is continuously resistant to the temperature of the top edge of the pan.

13. The specification of the '312 Patent describes the metal pan spaced from the plastic skirt with at least three points of contact between the metal pan and the plastic skirt: a heating element, a thermostat, and the stabilizing connection at the bottom. Those elements are discussed in the text and shown in the drawings.

14. Claim 8 of the '312 Patent, which relates to independent claim 1, recites, in part, "the base of the pan has a vertical rod engaged in an opening formed in the base of the outer skirt and separated from the rod by a sleeve of heat-insulating material which affords resistance to the temperature of said rod."

15. The prosecution history of the '312 Patent shows that the phrase "completely free with respect to the pan" in claim 1

means that the skirt is thermally insulated from the pan with an air gap, not that it is free from any other contacts with the pan:

> ... the skirt 3 is practically free with respect to the pan 1 or in other words that no thermal bridge is created between the pan and the skirt....

16. In connection with the prosecution of the '312 Patent, SEB did not change the original language of the claims in any material respect. In the prosecution history, SEB distinguished the "cool wall" invention from a cited Onishi patent, which shows the use of the adiabatic (insulating) material between the pan and the skirt. That discussion had essentially nothing to do with the presence or absence of a thermally insignificant stabilizing element.

17. At some point in 1997 SEB learned that Sunbeam Products Inc. was advertising and selling deep-fat fryers which SEB believed infringed the '312 Patent. Consequently, in March 1998, SEB sued Sunbeam for patent infringement in the United States District Court for the District of New Jersey.

18. Following the filing of that suit, SEB amended its complaint to name Pentalpha and Global–Tech as additional defendants. Pentalpha and Global–Tech did not appear until October 1998. At that point they moved to dismiss the amended complaint and to stay discovery. Discovery was stayed for approximately five months, and in January 1999, SEB settled with Sunbeam. Sunbeam agreed to cease selling the fryers and to pay substantial monetary damages to SEB.

19. Shortly thereafter, SEB learned that Global–Tech and Pentalpha continued to sell a nearly identical deep-fat fryer through a new distributor, Montgomery Ward. Those sales are the subject of this lawsuit.

20. In light of the progress of the New Jersey action, including the discovery stay and the settlement favorable to SEB, SEB did not unreasonably delay commencing this litigation.

21. The accused appliance is "an electrical deep fryer which has a metal pan having a wall, and an electric heating resister that heats said wall directly by conductive heating to a temperature higher than 150° C." *See* claim 1. This device is being sold to consumers throughout the United States and in this District.

22. The accused device includes each and every element of claim 1 of the '312 Patent, either literally or by equivalents. In the accused device the "pan [is] surrounded by a plastic skirt, wherein said skirt is of plastic material which does not continuously withstand a temperature of 150° C." Moreover, in the accused product the "skirt entirely surround[s] the lateral wall and said base of the pan [and is] separated from said wall and said base by an air space of sufficient width to limit the temperature of the skirt to a value which is compatible with the thermal resistance of the plastic material of the skirt." Moreover, the skirt is "completely free" with respect to the pan within the meaning the '312 Patent.

23. The accused device has "a ring which joins only the top edge of the skirt to the top edge of the pan and to which this latter is attached, said ring being of heat insulating material which is continuously resistant to the temperature of the top edge of the pan."

24. Montgomery Ward's sale of its deep fryer takes away sales which could have been made by SEB. This competition has the result of decreasing SEB's market share and decreasing its revenues through reduced prices.

25. Because of the similarity of the products, SEB stands to lose substantial sales during the upcoming Christmas holiday season due to sales of the accused product. The extent of these lost sales cannot be accurately quantified.

26. Montgomery Ward has not challenged the validity or enforceability of the '312 Patent. The injunction sought

herein is not inconsistent with the public interest.

## CONCLUSIONS OF LAW

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because SEB is asserting claims under the Patent Act. *See* 35 U.S.C. § 101 *et seq.* Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d). SEB bears the burden of establishing its right to preliminary injunctive relief based on four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the impact of the injunction on the public interest. *Bell & Howell Document Management Products Co. v. Altek Systems,* 132 F.3d 701, 705 (Fed.Cir.1997). SEB is entitled to a presumption of irreparable harm by establishing the validity and the infringement of its patent. *Reebok Intern. Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1556 (Fed.Cir.1994); *H.H. Robertson Co. v. United Steel Deck Inc.,* 820 F.2d 384, 390 (Fed.Cir.1987).

28. 35 U.S.C. § 271 provides in part "whoever without authority makes, uses, offers to sell, or sells any patented invent, within the United States ... during the term of the patent therefor, infringes the patent." 35 U.S.C. § 281 provides that "a patentee shall have remedy by civil action for his infringement of his patent" and courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

29. To determine whether a patent has been infringed, a two-step analysis is used under which the Court: (1) construes the claim to determine its meaning and scope; and (2) compares the properly construed claim to the accused device. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998). Claim construction is a question of law.

30. In determining the proper construction of a claim, a number of sources may properly be utilized for guidance. These sources include both intrinsic evidence such as the patent's specification and file history and extrinsic evidence such as expert testimony. In cases where an analysis of the intrinsic evidence alone, however, will resolve any ambiguity in a claim term, reliance on extrinsic evidence is improper. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582–83 (Fed. Cir.1996).

31. Claims are to be construed in a manner consistent with the specification, whether or not the claim language is ambiguous. The specification is the "single best guide to the meaning of a disputed term." *Id.* at 1582. Claims, both those which are clear and those which have been ambiguities, must be interpreted in light of the specification. *Autogiro Co. of America v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 397 (1967).

32. Infringement occurs when all elements in an asserted device are found in the accused device. *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481 (Fed. Cir.1984).

33. SEB is likely to succeed on the merits because that test is met here: the accused product contains each element of claim 1 of the '312 Patent. Consequently its use and sale in the United States infringes the patent.

34. Montgomery Ward and Pentalpha, in essence, argue that the accused product does not infringe claim 1 because its skirt is not "completely free with respect to the pan" as stated in claim 1. Claim 1 recites in part:

> ... said skirt entirely surrounding the lateral wall (1a) and the base (1b) of the pan and being separated from said wall

and said base by an air space (4) of sufficient width to limit the temperature of the skirt (3) ..., said skirt (3) being free with respect to the pan (1) with the exception of a ring (5) which joins only the top edge (3a) of the skirt to the top edge (1c) of the pan and to which this latter is attached, said ring (5) being of heat-insulating material....

35. According to the '312 Patent, there are other points of contact between the skirt and the metal pan, such as a heating element, a thermostat and a stabilizing element at the bottom. These points of contact do not create the thermal bridges, which the patented invention seeks to prevent. Defendants contend, nonetheless, that the bottom of the fry pan is stabilized to the bottom of the skirt and, therefore, is not "completely free with respect to the pan." The intrinsic patent evidence, however, does not permit this claim interpretation.

■ 36. When properly construed, claim 1 cannot mean that the skirt has no connection with the pan other than the heat-resistant ring. The specification of the '312 Patent unambiguously describes at least three other points of contact: a heating element, a thermostat, and a stabilizing connection at the bottom. Those elements are discussed in the text and shown in the drawings. According to defendants, claim 1 should be construed in a manner that would exclude the embodiment of the invention shown in the specification itself. This asserted claim construction is not correct. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1581 (Fed.Cir.1996), *cert. denied,* 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996); *Burke Inc. v. Bruno Independent Living Aids, Inc.,* 183 F.3d 1334, 51 U.S.P.Q.2d 1295, 1300 (Fed.Cir.1999).

37. The prosecution history confirms that the phrase "completely free with respect to the pan" means that the skirt is thermally insulated from the pan with an air gap, and not that it is free of any other contacts with the pan:

... the skirt 3 is practically free with respect to the pan 1 or in other words that no thermal bridge is created between the pan and the skirt....

38. Moreover, a connection between the skirt and pan is recited in dependent claim 8. Thus, it is clear that the claims of the '312 do not exclude all connections between the skirt and the metal pan.

39. This intrinsic patent evidence constitutes the public record on which competitors rely to determine the scope of the patented invention. *Vitronics,* 90 F.3d at 1577. Competitors who read the '312 Patent, look at its drawings and review its prosecution history, will learn that the claims cover a plastic skirt that is thermally insulated from the metal pan. They will understand that thermally insignificant contacts from the heating element, the thermostat and any stabilizing element do not create thermal bridges, and the appearance of these elements in a deep fryer does not remove it from the scope of the claimed invention. Defendants' asserted claim construction seeks to change the unambiguous public record, in violation of the principles of claim construction. *Markman,* 52 F.3d at 980–81.

■ 40. Thus, SEB is likely to prove at trial that the Admiral deep fryer infringes at least claim 1 of the '312 Patent.

41. In addition to literal infringement, infringement may exist under the doctrine of equivalents, which applies where the differences between the claimed invention and accused device are insubstantial. *Hilton Davis Chemical Co. v. Warner–Jenkinson Co., Inc.,* 62 F.3d 1512, 1517 (Fed. Cir.1995).

42. Independent claim 1 is to be construed to cover the embodiment of the invention shown in the specification and drawings, which includes a vertical stabilizing rod which extends from the metal pan through an insulating sleeve into the plastic skirt.

43. The phrase "completely free with respect to the pan," as recited in claim 1 of the '312 Patent, means that the outer plastic skirt is thermally insulated from the hot oil frying pan. In other words, claim 1 means there are no thermal bridges between the skirt and the pan. Claim 1 of the '312 Patent covers a deep-fat fryer with a thermally insulated stabilizing element at the bottom of the hot oil pan.

44. Claim 8 is a dependent claim. A dependent claim includes all the elements of the independent claim from which it depends. 35 U.S.C. § 112. Since an independent claim cannot be interpreted to exclude the elements of a dependent claim, the term "completely free" cannot be interpreted to exclude the heat insulated stabilizing pin claimed in dependent claim 8. *Kress Corp. v. Alexander Services, Inc.*, 991 F.Supp. 740, 745 (W.D.Pa.1997). Consequently, SEB is likely to prove at trial not only literal infringement, but infringement under the doctrine of equivalents.

45. The defendants have not challenged the validity of the '312 Patent, nor have they come forward with evidence of its invalidity. Consequently, the '312 Patent is presumed valid and this validity reinforces the prospect of the likelihood of success on the merits. This presumption has not been overcome.

46. SEB has demonstrated irreparable injury even though it is entitled to this presumption. The Christmas selling season is about to begin and SEB will lose sales as well as its position as the exclusive source of "supercool" deep fryers. This loss cannot be quantified. In addition, SEB already has lost market share, has been required to lower its prices, and has lost consumer confidence. These injuries are irreparable.

47. Determining the balance of hardships factor involves weighing the harm that would occur if the injunction were denied against the harm that would occur to the non-moving party if the injunction were granted. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d at 1446, 1457 (Fed. Cir.1988).

48. Here, were preliminary injunctive denied, SEB would be deprived of its right to exclude others from selling the patented device. On the other hand, if the injunction were granted, defendants temporarily would be enjoined from selling the infringing Admiral deep fryer, which Montgomery Ward only recently has begun to sell. Consequently, the balance of hardships weighs in SEB's favor.

49. In analyzing the public interest factor, courts consider whether any critical public interest would be harmed by the grant of the preliminary injunction. *Hybritech*, 849 F.2d at 1458. This Court divines none.

50. SEB has demonstrated a likelihood of success on the merits, that it will suffer irreparable harm absent an injunction, that the balance of hardships tips in its favor, and that the public interest favors an injunction.

### CONCLUSION

Plaintiff's motion for a preliminary injunction is granted. Plaintiff is directed to settle a proposed order in ten days on four days notice.

**SO ORDERED.**