NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
I concur in much of the court’s decision, but respectfully dissent in three areas, summarized as follows:
First, the panel majority states that misstatement of small entity status is per se material to patentability, and thus can render the patent permanently unenforceable for “inequitable conduct.” Although the panel majority correctly acts to reverse the district court’s factual finding of intent to deceive, my colleagues leave intact the district court’s flawed criterion of per se materiality. Thus the panel majority con *1306 tinues to endorse the principle of elimination of patent rights based on miscalculation of a fee. Statute, regulation, and precedent do not support this treatment.
Second, the panel majority states that the pretrial claim construction on interlocutory appeal of a preliminary injunction is the “law of the case,” and cannot be reviewed on final appeal of the district court’s final judgment. However, a preliminary injunction ruling is based on likelihoods and equities, and does not insulate the issues from appeal of the final judgment. The panel majority is incorrect in suggesting that such preliminary rulings are the law of the case.
Third, the panel majority construes the patent claims to exclude the preferred embodiment shown in Figure 10 of the patent. The accused ProTool Bag is identical to the bag in Figure 10. However, the court construes the claims to exclude Figure 10, and thus to avoid infringement. That construction is incorrect, as is the decision of noninfringement based on that construction.
I
The small entity fee
Travel Caddy has fewer than five hundred employees. However, the small entity fee-reduction regulation provides an exception to fee reduction when the small entity has licensed the patent to a large entity. Travel Caddy had a distributorship agreement with The Rooster Group, which was not a small entity when the employees of its Mexican subsidiary are counted. This distributorship agreement, in addition to the commercial terms of supply, price, payment, etc., authorized The Rooster Group to obtain the Travel Caddy products from an alternate source if Travel Caddy can not meet the alternative source’s price terms; the distributorship agreement provided that if this occurred “Rooster will pay a Royalty of ... 5% for patented and patent pending items.” This contingent arrangement was held by the district court to defeat Travel Caddy’s small entity status.
A
On reviewing the district court’s ruling of inequitable conduct, the panel majority holds that “a false assertion of small entity status [is] per se material.” Maj. op. at 1294. Although the panel majority also states that “we need not decide that question” of materiality, id., they do decide the question of materiality, for they decline to correct the district court’s ruling that improper payment of the small entity fee is material to patentability.
On the question of intent to deceive, the panel majority correctly rules that deceptive intent was not established. The district court’s ruling that attorney error establishes deceptive intent when the attorney is experienced is surely not supportable as applied to the payment of an incorrect fee. The principle of Therasense, Inc. v. Beckon, Dickinson & Co., 649 F.3d 1276 (Fed.Cir.2011) (en banc) should be applied, for the “affirmative acts of egregious misconduct” contemplated in Therasense relate to the substance of patentability, not the payment of an incorrect fee. In addition, the policy embodied in 37 C.F.R. § 1.28(c) shows recognition of the possibility of error, and the intention that such error would be correctable without penalty. This court should be mindful of opening another path whereby “[l]eft unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system.” Therasense, 649 F.3d at 1289.
My colleagues err in ruling that the filing of the small entity statement by affidavit renders the incorrect statement “per *1307 se material.” Immateriality of an affidavit that is not the basis of the patent grant was long ago established. In Corona Cord Tire Co. v. Dovan Chem. Corp., 276 U.S. 358, 374, 48 S.Ct. 380, 72 L.Ed. 610 (1928), the Court stated the inappropriateness of extinguishing a patent for a misrepresentation that did not affect patentability, stating that
the affidavits, though perhaps reckless, were not the basis for [the grant of the patent] or essentially material to its issue. The reasonable presumption of validity furnished by the grant of the patent, therefore, would not seem to be destroyed.
The en banc court reiterated in Therasense that “this doctrine [inequitable conduct] should only be applied in instances where the patentee’s misconduct resulted in the unfair benefit of receiving an unwarranted claim.” 649 F.3d at 1292; see id. (“[E]nforcement of an otherwise valid patent does not injure the public merely because of misconduct, lurking somewhere in patent prosecution, that was immaterial to the patent’s issuance.”). The court’s equivocation on materiality and intent based on error in small entity status simply adds uncertainty when such is unwarranted.
B
The underlying question is whether a contingent patent license to a distributor, although not implemented, defeats small entity status as a matter of statutory interpretation. The district court so held. The panel majority does not discuss this holding; leaving it as a cloud on possibly many small businesses. This issue warrants review.
II
Law of the case
The “law of the case” does not apply to preliminary rulings made on pretrial motion. My colleagues hold that this court’s prior review of a pretrial denial of a motion for injunction pendente lite may be treated as the law of the case, without review of the information adduced at trial. That is not the rule, and for sound reason, as illustrated herein. The result of the majority’s shortcut is its failure to rethink the application of the claims to the patented tool bag leading to the majority’s retention of an erroneous claim construction.
The district court’s ruling on motion for a preliminary injunction is based on likelihoods, equities, and discretion, and receives interlocutory review on those grounds. The preliminary decision and its premises are not the “law of the case,” and these issues cannot be refused appellate review on final judgment. See Glaxo Grp. Ltd. v. Apotex, Inc., 376 F.3d 1339, 1346 (Fed.Cir.2004) (“An appellate court’s preliminary injunction opinion has no conclusive bearing at the trial on the merits and is not binding on a subsequent panel.”); Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1581 (Fed.Cir.1994) (“[A] decision by an appellate court on an interlocutory appeal is no more final than the appealed decision itself.”); cf. Bio-Technology Gen. Corp. v. Genentech, Inc., 267 F.3d 1325, 1329 (Fed.Cir.2001) (stating that the court was bound by two interlocutory appeals of the same issues of claim construction).
Before final judgment, a court may “reconsider any portion of its decision and reopen any part of the case.” Marconi Wireless Tel. Co. v. United States, 320 U.S. 1, 47, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943). This rule recognizes that interim rulings may be appropriate as the proceedings unfold, although interim findings and conclusions may be changed by the revelations of trial. A pretrial motion for injunction pendente lite requires an estimation of *1308 likelihoods; it does not pretend to be a final decision. I need not belabor the judicial experience whereby witnesses and documents and argument may affect the outcome of a situation whose “likelihood” may have appeared otherwise at the pretrial preliminary injunction stage.
Thus the Court has reiterated that findings of fact and conclusions of law at the preliminary injunction stage are not binding. Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (“The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.”). This protocol recognizes that such motions are decided on likelihoods and equities before all the evidence is in.
Nonetheless, the panel majority declines to revisit this court’s pretrial ruling on claim construction. Precedent counsels otherwise. In SEB S.A. v. Montgomery Ward & Co., Inc., 594 F.3d 1360, 1368 (Fed.Cir.2010), the court held that the “prior affirmance of the district court’s preliminary injunction order does not make the district court’s claim construction in its 1999 opinion the law of the case.”
My colleagues propose to avoid precedent by stating that there was a Markman hearing and “the parties have not identified any new factual findings.” Maj. op. 1302-03. However, this court in SEB v. Montgomery Ward rejected that position, for the district court in SEB v. Montgomery Ward, had explained that “[t]he application for the preliminary injunction was combined with the Markman hearing.” 77 F.Supp.2d 399, 400 (S.D.N.Y.1999), aff'd, 243 F.3d 566 (Fed.Cir.2000) (Table). My colleagues’ equivocal ruling today simply creates conflict with precedent, as well as moves patent cases further from standard litigation practices and safeguards.
Ill
Infringement
The panel majority holds that the accused ProTool Bag, which is a copy of Travel Caddy’s bag shown in Figure 10 of the '104 patent, does not infringe the claims directed to Figure 10. The panel majority construes the claims of the patents to exclude the bag in Figure 10, and thus to exclude infringement by the bag that Union Rich copied from Travel Caddy’s embodiment of Figure 10:
[[Image here]]
I' Hh 10 of‘104 Patent; A251).
[[Image here]]
*1309 The question of infringement related principally to the terms “panels” and “continuous closed loop binding,” in claim 19 of the '104 patent:
19. A case for car[ry]ing tools or other items comprising, in combination:
a planar, fabric covered first end panel having a generally rigid lower section with a bottom side edge, a front side edge and a back side edge, and an upper section;
a second, planar, fabric covered end panel constructed substantially identical to the first end panel and having a configuration generally congruent with the first end panel and parallel to and spaced from the first end panel and, said second panel also including a bottom edge, a front side edge and a back side edge;
a planar, generally rigid, fabric covered, rectangular perimeter shaped, bottom panel between the first and second end panels to form a generally three sided, generally rigid, fabric covered box with the first and second end panels extending upwardly from the bottom panel, said bottom panel including a front edge, a back edge, and first and second side edges;
a first, flexible, fabric front panel having a top edge and joined between the front side edges of the first and second end panels;
a second, flexible fabric back panel having a top edge and joined between the backside edges of the first and second end panels; and
a continuous, closed loop binding extending over fabric covering the bottom panel and the flexible panels, said binding stitched thereto along the side edges of the bottom panel and the side edges and top edges of the flexible panels.
Viewing “panels” and “binding” as technical terms, “[a] technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning.” Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1578 (Fed.Cir.1996).
Union Rich argued that the ProTool Bag does not have the claimed edges of the bottom panel and front and back panels as described in the specification as extending beyond the end panels. However, even Union Rich’s expert, Dr. R. Parachuru, agreed that Figure 10 shows a bag whose bottom panel extends beyond the end panel:
Q. But as you sit here — and would this portion that extends beyond the end panel that appears at the bottom of item 202 of Figure 10, does this appear to be a part of the bottom panel?
A. Yes, to me, that’s part of the bottom panel.
Q. And again, it extends beyond the end panels?
A. End panels, yes.
Q. Is that a yes?
A. Yes.
Parachuru Dep. 235:10-20 (June 6, 2006), J.A. 2194.
This is not complex technology, and the invention is illustrated in the drawing of the device that is the subject of the claims. The district court construed “continuous, closed loop binding” of claim 19 to mean “[a] binding that is folded over and stretched to provide a means to join the fabric edges of component parts of the case in a closed loop; a ‘continuous’ closed loop binding extends uninterrupted with no apparent beginning or ending point.” Outside the Box Innovations, LLC v. Travel Caddy, Inc., No. 05-cv-2482, 2006 WL 6142860, at *1, 2006 U.S. Dist. LEXIS 100640, at *3 (N.D.Ga. Sept. 18, 2006). The parties do not dispute this definition. *1310 The binding is defined in the specification as “extending over fabric covering the bottom panel and the flexible [front and back] panels” and stitched to the panels “along the side edges of the bottom panel and the side edges and top edges of the flexible panels.” '104 patent, col.8 11.57-61. It does not conflict with the description of the edges of the panels, as the patent drawings make clear. My colleagues’ view that the binding cannot be an edge is contrary to the rules of construction.
The patent drawings illustrate the invention, and generally represent preferred embodiments of the invention. See Primos, Inc. v. Hunter’s Specialties, Inc., 451 F.3d 841, 848 (Fed.Cir.2006) (the patent drawings are evidence of the claimed invention). A claim construction that excludes a preferred embodiment “is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support.” Modine Mfg. Co. v. Int’l Trade Comm’n, 75 F.3d 1545, 1550 (Fed.Cir.1996). As stated in Hoechst, 78 F.3d at 1581 “it is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way.”
It is highly unusual to construe routine patent claims so as to exclude the embodiments in the drawings, when there is no prosecution disclaimer. The purpose of patent drawings is to focus the subject matter on which a patent is sought. See Oatey Co. v. IPS Corp., 514 F.3d 1271, 1277 (Fed.Cir.2008) (rejecting claim construction that excluded the embodiment in the patent drawing); MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1333 (Fed.Cir.2007) (rejecting claim construction of “adjacent” to mean contiguous or connected when patent drawings illustrated parts next to each other but not connected); Funai Elec. Co. Ltd. v. Daewoo Elees. Corp., 616 F.3d 1357, 1371 (Fed.Cir.2010) (declining to require that a series circuit junction point lie between the erasing heads when the patent drawing shows a series junction point not located between the two erasing heads); Primos, 451 F.3d at 848 (declining to require the term “engaging” to mean interlocking when patent drawings illustrated touching).
The panel majority’s claim construction to exclude the embodiment in Figure 10 is incorrect. On the correct claim construction, there is no dispute that the ProTool Bag infringes claim 19. I respectfully dissent.